## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

KATHRYN M. RHODES, an individual,

      Plaintiff,

vs.

THE FAIR CREDIT LAW GROUP, LLC, a Florida limited
liability company, d/b/a "Fair Credit Law Group, LLC,"
JOEL A. BROWN, an individual, ROBERT A. FRIEDMAN,
an individual, JOHN DOE 1-15, unknown individuals, and
JOHN DOE CORPORATIONS 1-10, unknown business
entities,

      Defendants.

_____/

### COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, Kathryn M. Rhodes, an individual, by and through her undersigned attorney,

sues Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, doing

business as "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman,

an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown

business entities, and alleges:

### *INTRODUCTION*

1.    This lawsuit involves claims by an impoverished, disabled woman in Idaho who

was deceived into paying a substantial sum of money to lawyers in Florida with the expectation

that Defendants would relieve her of her debt burdens and improve her credit by asserting

various defenses — which are now revealed to be fictitious — to her credit obligations.

2.      As detailed below, under the guise of providing legal services, Defendants operated an advance fee scheme designed to extract attorney's fees regardless of whether any useful services were performed. As a result of the bogus credit services program operated by Defendants, Ms. Rhodes found herself in greater financial difficulty with defaulted debt obligations and further impaired credit than she had before she encountered Defendants.

## JURISDICTION

3.      The jurisdiction of this Court is established pursuant to 15 U.S.C. §1679, *et sequi*, known more commonly as the "Federal Credit Repair Organizations Act" ("CROA"), and 15 U.S.C. §6101, *et sequi*, known more commonly as the "Federal Telemarketing and Consumer Fraud and Abuse Prevention Act," and with respect to state law claims pursuant to the pendent jurisdiction of this Court pursuant to 28 U.S.C. §1367.

## ALLEGATIONS AS TO PARTIES

4.      At all times material hereto, Plaintiff, Kathryn M. Rhodes ("Ms. Rhodes"), was *sui juris* and a resident of Boise, Ada County, Idaho.

5.      At all times material hereto, Defendant, The Fair Credit Law Group, LLC, doing business as "Fair Credit Law Group, LLC" ("Fair Credit Law"), was a Florida limited liability company doing business at 3389 Sheridan Street #245, Hollywood, Florida 33021.

6.      At all times material hereto, Defendant, Joel A. Brown ("Mr. Brown" or "Attorney Brown"), was *sui juris* and a resident of Broward County, Florida.

7.      At all times material hereto, Defendant, Robert A. Friedman ("Mr. Friedman" or "Attorney Friedman"), was *sui juris* and a resident of Broward County, Florida.

8.      At all times material hereto, Mr. Brown and Mr. Friedman were the officers,

managers and control persons of Fair Credit Law collectively and maintained complete authority and control over Fair Credit Law to the extent that Fair Credit Law was the alter-ego and mere instrumentality of Mr. Brown and Mr. Friedman.

9.      As detailed below, Mr. Brown, Mr. Friedman, Fair Credit Law, together with their employees, agents, and representatives acting within the scope of their authority (collectively "Fair Credit Law Group"), either directly participated in the wrongful conduct described below or alternatively ratified such activity upon being informed of same.

10.      At all times material hereto, Defendants John Doe 1-15 ("Unknown Individual Defendants"), were persons who directly participated or aided and abetted in the misconduct described below but whose identities are currently known to Ms. Rhodes.

11.      At all times material hereto, Defendants John Doe Corporations 1-10 ("Unknown Corporate Defendants"), were business entities which directly participated or aided and abetted in the misconduct described below but whose identities are currently unknown to Ms. Rhodes.

12.      Through discovery, Ms. Rhodes shall identify the Unknown Individual Defendants and Unknown Corporate Defendants (collectively "Unknown Defendants"), and shall amend her pleadings to name and serve same.

## FACTUAL ALLEGATIONS

### A. OVERVIEW OF BUSINESS MODEL OF DEFENDANTS

13.      A large number of individuals and families throughout the United States are struggling to pay their credit card debts because of economic forces largely beyond their control. Such families are vulnerable to predatory businesses that entice consumers with the prospect of settling such debt for pennies on the dollar and restoring creditworthiness to the consumer.

14.     Due to the unfair and deceptive practices endemic to the "debt relief" industry, the Federal Trade Commission ("FTC") amended the Telemarketing Sales Rules ("TRS") to regulate debt relief in 2010.  Most significant in the amendments to the TRS is an "advance fee ban" which prohibits firms from collecting fees on accounts except where a settlement agreement has been reached and at least one settlement payment has been made by the consumer to the creditor.

15.     Following the issuance of the FTC debt settlement rules, there has been a rise in various attorney-related debt settlement models, in an apparent effort to evade both the FTC's advance fee ban, as well as state laws that often exempt attorneys from their debt settlement regulations.

16.     While the models differ across companies, in each, attorneys and non-attorneys are affiliated, but the attorneys are present largely to provide a cover for collecting advance fees. In most instances, the attorneys do not engage in legal work and only non-attorneys perform debt settlement work. See, Elizabeth Ody, "*Debt Firms Play Whack-a-Mole to Skirt Fee Ban*," Bloomberg News (September 29, 2011).

### B.  FRAGILE FINANCIAL CIRCUMSTANCES OF MS. RHODES

17.     For the past several years, Ms. Rhodes has been living on the thinnest of financial margins. As the result of a sports injury that severely damaged her spine, Ms. Rhodes has been largely confined to her home and has been unable to work.  Accordingly, the only source of income of Ms. Rhodes is a small Social Security disability check each month together with food stamps and needs-based public assistance.

18.     Despite her best efforts, Ms. Rhodes found it increasingly difficult to keep pace with her bills to the extent that her credit card accounts began to have ever larger balances.

### C. USE OF "LAWYER REFERRAL SERVICE" TO ENSNARE UNSUSPECTING OUT-OF-STATE CONSUMERS

#### 1. Introduction

19.    In an effort to find a solution to her financial problems, Ms. Rhodes searched the internet for "professionals" to assist in her credit problem. While perusing the internet, Ms. Rhodes viewed a website maintained by an entity known as the "Lawyer Referral Network, LLC" or one of its successors or affiliates  (collectively "LRN").

20.    Based on the information currently available to Ms. Rhodes, LRN is a for-profit lawyer referral service located at 7000 W. Palmetto Park Road, Suite 402, Boca Raton, Florida 33433 ("Processing Center Location").

21.    When Ms. Rhodes contacted LRN, Ms. Rhodes spoke to an individual who identified himself as "David Block" ("Mr. Block") and who stated that he would be the "consumer protection coordinator" for Ms. Rhodes.

#### 2. History of Related Debt-Relief Operations

22.    For several years prior to the filing of the instant action,  Mr. Block was formerly an employee of a prior lawyer referral service,  to-wit: The Center for Legal Justice ("CLJ"). *See*, www.linkedin.com/in/david-block-27la122b.

23.    According to the Florida Secretary of State, CLJ was organized by an unlicensed lawyer, Edward Cherry ("Mr. Cherry") on September 27, 2013.

24.    The history of Mr. Cherry's involvement in fraudulent debt settlement schemes is well documented in court adjudications in federal and state courts throughout the United States. *See, Chase Bank USA, N.A. v. Consumer Law Center of Delray Beach, LLC,* 2015 WL456650*3 (D. Del. 2015) [in RICO action, court determined that form letters created and used by Mr.

Cherry  in debt settlement scheme constituted "a sham and do not assert a valid billing error dispute under the (Fair Credit Billing Act)"]; *Cherry v. Office of the Attorney General*, 145 So.3d 107 (Fla. 4th DCA 2013) [ *per curiam* affirmance of Attorney General enforcement action]; *see also, In re Allegro Law LLC*, 545 B.R. 675 (U.S. Bkr.Ct. M.D. Ala. 2016) [adversarial proceeding detailing debt relief scheme of Mr. Cherry]; *Landtrust Company LLC v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL6720994 (M.D. Fla. 2012) [details a title transfer scam by Mr. Cherry].

25.    Ms. Rhodes does not have any personal knowledge concerning the involvement directly or indirectly of Mr. Cherry with respect to LRN. However, based on the well-documented use of aliases and shell corporations by Mr. Cherry[1], Ms. Rhodes has cause to believe that LRN is yet another business organized by Mr. Cherry or his agents to evade federal and state laws. In any event, regardless of the involvement of Mr. Cherry or his agents, the business model of LRN and Defendants mirrors that of Mr. Cherry and his related organizations in nearly every respect from the manner of solicitation, the use of non-lawyer agents, and the transmission of bogus letters to creditors and consumer reporting agencies.

### 3. *Initial "Sales Pitch" and Marketing Practices of Defendants*

#### a. *Deception Concerning Experience and Reputation of Defendants*

---

[1]  The various court orders entered against Mr. Cherry have established that Mr. Cherry used the aliases of "Edward C. Tudor," "Edward Kennedy," and "Edward Egan."  In 2013, Mr. Cherry legally changed his name to "Edward Gregory Steadman." In addition to operating under a host of alias names, Mr. Cherry has organized or controlled a myriad of debt-relief organizations, including Hess Kennedy Chartered, LLC, Hess Kennedy Holdings, Ltd., Hess Kennedy Company Chartered BWI, the Consumer Law Center, LLC, Legal Debt-Relief Center, LLC, Consumer Law Center of Boca Raton, Inc., The Steadman Group, and August Belmont & Company

26.    In the initial conversation with Mr. Block, Ms. Rhodes informed Mr. Block of

the following:

- that she was a resident of Boise, Idaho;

- that she was a senior citizen with limited Social Security disability
  income;

- that she had approximately $52,000 in unsecured credit card debt that she
  was having difficulty in paying; and

- that she was concerned about maintaining her credit and credit reputation.

27.    Mr. Block affirmatively stated to Ms. Rhodes that "a panel of attorneys" would be

able to resolve her debt problem and that a "qualified attorney" would be able to assist her.

28.    As a follow-up to the telephone discussion with Ms. Rhodes, on June 12, 2014,

Mr. Block emailed Ms. Rhodes with respect to the "qualified attorney" referrals ("Block Lawyer

Referral Email").

29.    The Block Lawyer Referral Email is set forth in its entirety below:

From: Lawyer Referral Network

Sent: Jun 12, 2014 6:54 AM

To: bcrhodes@mindspring.com

Subject: Requested Information

Hello,
Thank you for taking the time to share your current situation with us. As
promised, we have attached the panel member's credentials for you to review.
The seasoned panel of attorneys that we can refer you to have all had prior
accomplishments that show their high ethical standards and professional ability.
Some of the Awards & Achievements received by these panel members include
but are not limited to: achieving the Martindale Hubbell Award consecutively for
28-years. Being appointed unanimously by the U.S. Senate to be Special Counsel
for the justice department; As well as many guest appearances on news
broadcasts to bring knowledge to consumers about how to get help with the
abusive banking tactics and credit bureau reporting errors. There are several

websites for the attorneys that you can review. Feel free to look at these
Websites & Credentials by clicking the links below:

Websites-
www.paherman.com
www.faircreditlawgroup.com
www.advocacygrouplawfirm.com

Additional Credentials and prior accomplishments-
News & Media- news & media
AVVO- Paul Herman- AVVO
Department of Justice- www.justice.gov
 whitehouse.archives.gov

Following is the contact information for the Consumer Protection
Coordinator with whom you spoke.  Please make yourself available for
the scheduled appointment and be sure to contact the Coordinator in
advance if you are unable to keep the scheduled time. Please be sure to
have any requested information available for discussion that may be
pertinent to your case.

Best Regards,
David Block
Consumer Protection Coordinator
Department of Agriculture and Consumer Services License # TP23265
561-880-8876 Direct Phone
561-750-0593 Fax
davidb@thelrn.com

Thank you for your time and we look forward to assisting you.

("Referral Panel Qualification Representation")

30.     In the Block Lawyer Referral Email, Mr. Block called himself a "consumer

protection coordinator" with a "license" number, insinuating that Mr. Block was a "licensed"

consumer protection coordinator when in reality the license number was merely for "commercial

telephone salesperson" license issued by the Florida Department of Agriculture and Consumer

Services.

31.     According to the Block Lawyer Referral Email, the "referral panel" consisted of a

total of three law firms, all of which were located in the State of Florida, inclusive of Fair Credit Law Group.

32.     The Referral Panel Qualification Representation falsely, deceptively and misleadingly stated that the "panel members" had "high ethical standards and professional ability" when one or more of the "panel members" had questionable ethical standards and professional ability.

33.     As a salient but not isolated example, Attorney Brown together with Attorney Paul Herman ("Attorney Herman")—  who were both employed at Fair Credit Law — were sanctioned by this Court for *inter alia* ignoring court orders in *Szoke v. Geotech Environmental, Inc.*, 2009 WL 2589149 (S.D.Fla. 2009).

34.     With respect to Attorney Herman, Attorney Herman had been accused of misconduct with respect to debt settlement services in that certain class action styled "*Cheeks v. Fidelity & Deposit Company of Maryland*; United States District Court, Northern District of California, Case No.: 3:13cv-01854," a copy of which complaint is available at 2013 WL 1943982 (M.D.Ca.) ["Despite the fact that the Herman law firm did nothing to settle ... debts as ..... promised, none of the over $900 she paid has been returned."]. Further, in May 2015, Attorney Herman was suspended from the practice of law by the Florida Bar as a result of allowing non-lawyers to file bankruptcy petitions. *See, Florida Bar v. Herman*, 2015 WL 2329418 (Fla. 2015).

                    b.   *Deceptive Internet Advertising by Defendants*

35.     Despite the fact that Ms. Rhodes was a resident of Idaho, LRN "referred" Ms. Rhodes to Fair Credit Law –  a Florida law firm without any attorneys licensed to practice law in

Idaho.

36.     In order to induce Ms. Rhodes and others into retaining Defendants, Defendants

maintained advertisements and websites that described the background and experience of Mr.

Brown and Mr. Friedman.

37.     In describing the services provided to persons such as Ms. Rhodes, Defendants

represented *inter alia* the following at  www.faircreditlawgroup.com website:

> It's time to protect your rights with an experienced attorney, not a paralegal.

> ("Attorney Meaningful Involvement Representation")

38.     The Attorney Meaningful Involvement Representation was materially false,

deceptive and misleading insofar as it was the intention of Defendants to have non-lawyers at the

Processing Center Location perform the ministerial function of fabricating its letters to the

creditors, consumer reporting agencies and other third parties as opposed to having Mr. Brown or

Mr. Friedman meaningfully involved as attorneys in the representation of Ms. Rhodes.

39.     At   www.manta.com /c/cmrprp0d/v-fair-credit-law-group-llc website, Defendants

represented :

> ## About The Fair Credit Law Group, LLC

> **Consumer litigation law firm protecting individuals in debt and credit fields. We sue debt collectors, fix credit reporting errors, file bankruptcy.**

> The Fair Credit Law Group was formed to protect the rights of individual consumers against corporate abuses found in the consumer credit and debt fields. Our goal is to provide the most comprehensive and complete consumer law protection to all individuals through our experienced and talented litigation team. We are the only firm in South Florida that can provide such a wide array of consumer services and our lawyers have over 60 years of litigation experience. We can sue creditors and many times

erase your debt and get money back for you. **We can fix your credit and
have multiple lawsuits against the credit reporting agencies.** We can
defend you in court in credit card lawsuits. We can file bankruptcy. We
can also handle any commercial litigation need you or your company has.

[Underlining by Plaintiff; bold print in original]
("Credit Restoration Experience and Ability Representation")

40.     The Credit Restoration Experience and Ability Representation was materially

false, deceptive and misleading in that Defendants were not the "only law firm in South Florida"

involved in consumer protection.

41.     The Credit Restoration Experience and Ability Representation by Defendants was

materially false, deceptive and misleading in that the only attorneys employed by Fair Credit Law

Group — Mr. Brown and Mr. Friedman — had substantially less than "60 years of litigation

experience."

42.     The Credit Restoration Experience and Ability Representation by Defendants was

materially false, deceptive and misleading in that Defendants failed to inform Ms. Rhodes that

Defendants could not represent Ms. Rhodes in litigation in the State of Idaho without an attorney

licensed in the State of Idaho.

43.     The Credit Restoration Experience and Ability Representation by Defendants was

materially false, deceptive and misleading in that Defendants stated Defendants could "fix (her)

credit" when Defendants did not have the ability to ameliorate derogatory credit reporting in the

absence of inaccurate or obsolete information being reported to the credit reporting agencies.

44.     The Credit Restoration Experience and Ability Representation by Defendants was

materially false, deceptive and misleading as Defendants stated that Defendants had "multiple

lawsuits against credit reporting agencies" when Defendants did not have any pending litigation

against the credit reporting agencies at the time of the representation by Defendants and

Defendants had limited experience in litigation against credit reporting agencies based on a

review of the Public Access to Court Electronic Records ("PACER") system.

45.     At www.goodlifecredit.com website, Defendants represented:

> The directing attorneys, Robert Friedman and Joel Brown, each have over ten
> years experience at being at the leading edge of litigation in the credit reporting
> field.... Good credit life can find the best way to legally challenge negative items
> (sic) affecting your score. **The Attorneys have seen it all and have helped to get
> virtually every kind of negative item removed from credit files** ...

[emphasis added by Plaintiff]
("Credit Litigation Experience Representation")

46.     The Credit Litigation Experience Representation by Defendants was materially

false, deceptive and misleading in that the representation that Defendants could "get virtually

every kind of negative item removed from credit files" was a blatant misrepresentation of the

ability of any attorney to perform such services in a lawful manner under the Fair Credit

Reporting Act. The Defendants knew that only inaccurate or obsolete information could be

lawfully removed from consumer files but failed to disclose such facts in the Credit Litigation

Experience Representation.

47.     The Credit Litigation Experience Representation by Defendants was materially

false, deceptive and misleading as the Defendants implied that accurate credit information in a

consumer could be lawfully removed as a result of the efforts of Defendants.

*c.  Deception by Defendants with Respect to Ability to Act as Attorneys in Idaho*

48.     Notwithstanding the fact that no attorney of Fair Credit Law was a member of the

Idaho Bar or was authorized to practice in state or federal court in the State of Idaho, Defendants

through LRN, on or about June 16, 2014, provided Ms. Rhodes with a so-called "Case File

Creation Packet" which included *inter alia*:

- an undated letter addressed to "Dear Valued Client" ("Introduction Letter"), a true and correct copy of which is attached hereto and incorporated by reference as Exhibit "A;" and

- a document entitled "Legal Services Agreement" ("Employment Agreement"), a true and correct copy (with handwritten notations by Ms. Rhodes) of which is attached hereto and incorporated by reference as Exhibit "B."

49.    The Introduction Letter informed Ms. Rhodes that she had been assigned  a "dedicated legal assistant" by the name of "Sandy Harris" who would be Ms. Rhodes' "main point of contact" ("Ms. Harris").

50.    Ms. Harris was not an employee of Fair Credit Law but rather an employee of an entity known as "Outsourced Legal Services, LLC" which was located at the Processing Center Location.

51.    By information and belief, the Processing Center Location was a business operated by LRN or some other non-lawyer entity which collected and split fees with Defendants.

52.    Pursuant to the Introduction Letter, Defendants stated that Fair Credit Law employed attorneys licensed  outside the state of Florida. In particular, Defendants represented the following:

THIS LAWFIRM EMPLOYS ONE OR MORE ATTORNEYS ADMITTED TO PRACTICE IN THE FOLLOWING STATES: AL, AR, AZ, CA, CO, CT, DC, FL, GA, IA, ID, IL, IN, KS, KY, LA, MA, MD, ME, MI, MN, MO, MS, NC, NE, NH, NJ, NM, NV, NY, OH, OK, OR, PA, RI, SC, TN, TX, VA, VT, WA, WI,

WV, WY

("Nationwide Law Firm Representation").

53.     The Nationwide Law Firm Representation was materially false, deceptive and

misleading in that Defendants did not have employees who were attorneys admitted outside the

State of Florida as set forth in the National Law Firm Representation, and most notably Idaho.

### D.   EMPLOYMENT OF FLORIDA LAYWERS TO PERFORM LEGAL SERVICES FOR IDAHO RESIDENT

#### 1.   Terms of Employment

54.     Pursuant to the Employment Agreement, Defendants agreed to *inter alia* to

perform the following services:

1.   <u>Scope of Legal Representation</u>.

a.     The Legal Service(s) that attorney has represented to provide are as
follows:

i.     To validate, dispute, and/or litigate or arbitrate all of the consumer's
accounts listed in Exhibit "A" and to verify, dispute, and/or litigate and
correct inaccurate or erroneous credit report related items and information
with all credit reporting agencies, furnishers of information and creditors;
in order to achieve a resolution of those accounts illustrated in Exhibit A.
Resolution is defined in paragraph 1(c)(ii).....

v.     To remit a letter to the three major credit reporting agencies indicating that
the Client desires that the credit reporting agencies reinvestigate any
inaccurate or derogatory information contained in the Client's consumer
credit report.

("Credit Repair Provision")

55.     In reliance upon the various representations made by Defendants, Ms. Rhodes

agreed to employ Defendants to assist her in dealing with her crushing credit problem.

56.     Pursuant to the Employment Agreement, Ms. Rhodes became obligated to pay

Defendants the sum of Sixteen Thousand Five Hundred Dollars ($16,500.00) ("Credit Services

Fee").

## 2. *Financing of Credit Services Fee*

57.     In order to finance the Credit Services Fee, Defendants required that Ms. Rhodes – a person already burdened by significant consumer debt – execute an Installment Note ("Finance Agreement") in the principal amount of $16,500 ("Credit Services Promissory Note").

58.     A true and correct copy of the Credit Services Promissory Note is attached hereto and incorporated by reference as Exhibit "C."

59.     Pursuant to the Credit Services Promissory Note, Ms. Rhodes became obligated to pay Six Hundred Eighty Seven and 50/100ths Dollars ($687.50) per month ("Monthly Installment Payment") on the 15th day of each month.

60.     While the Defendants maintained their office at 3389 Sheridan Street, Suite 245, Hollywood, Florida 33021, Ms. Rhodes was required under the Credit Services Promissory Note to make her payments at the Processing Center Location to a third party, Harbinger Capital Group ("Harbinger Capital").

61.     By information and belief, Harbinger Capital is an entity that was organized or is managed by Mr. Cherry or one of several of the various persons associated with Mr. Cherry.

62.     Prior to the time Ms. Rhodes entered into the Employment Agreement, Ms. Rhodes had informed Defendants and LRN that she owed the following creditors ("Rhodes Unsecured Creditors") :

| Name of Creditor | Amount |
| --- | --- |
| U.S. Bank | $19,119.00 |
| Capital One Bank | $18,160.00 |
| AT&T Mastercard | $15,024.00 |
| Total: | $52,303.00 |

63.     Despite the fact that Defendants could not represent Ms. Rhodes in any legal proceeding to be filed against her by credit card providers without an Idaho attorney, Defendants charged ⅓ of the outstanding credit card balance of Ms. Rhodes for "legal services."

64.     In order to pay the Monthly Installment Payments to Defendants, Ms. Rhodes was required to stop making payments to her credit card providers, resulting in a default on her obligations to same.

65.     After entry into the Employment Agreement,  Ms. Rhodes faithfully paid each and every monthly installment payment in the belief that Defendants were providing meaningful legal services on her behalf to obviate her credit problem.

### E.   REVIEW OF WORTHLESS "LEGAL SERVICES" BY DEFENDANTS

#### 1.   Use of Bogus Form Letters

##### a.  To Creditors

66.     Instead of performing meaningful legal services on behalf of Ms. Rhodes, Defendants sent a series of mass-generated form letters ("Form Letters") to the creditors of Ms. Rhodes and the three national consumer reporting agencies ("CRAs") from the Processing Center Location.

67.     The Form Letters sent out by Defendants were purposefully staggered over a period of several weeks to give the false impression to Ms. Rhodes that the attorneys — Mr. Brown and Mr. Friedman — were actively involved in her representation when in fact Mr. Brown and Mr. Friedman had no meaningful involvement in the representation of Ms. Rhodes and that the credit relief services were progressing towards the objective of providing debt relief.

68.     To further their scheme to give the appearance of Defendants doing meaningful

legal work on behalf of Ms. Rhodes, on or about July 17, 2014, the Defendants sent or caused to be sent from the Processing Center Location a form letter to each of the Rhodes Unsecured Creditors ("Representation Letters").

69.     A true and correct copy of the Representation Letters sent to AT&T Universal, Capital One Bank, and US Bank are attached hereto as Composite Exhibit "D."

70.     On August 18, 2014, Defendants sent or caused to be sent from the Processing Center Location a second form letter to each of the Rhodes Unsecured Creditors which was addressed in all-capital letter "BILLING ERRORS" ("False Creditor Dispute Form Letter").

71.     A true and correct copy of the False Creditor Dispute Form Letters (with redacted personal information of Ms. Rhodes) are attached hereto as Composite Exhibit "E."

72.     The False Creditor Dispute Form Letter falsely represented to the recipient creditor that a legitimate "billing error dispute" existed with respect to the subject credit line in order to trigger the obligation of the creditor under the Fair Credit Billing Act ("FCBA") to investigate the alleged dispute, provide documentation requested by the card member, and refrain from taking action to collect the disputed debt.

73.     The False Creditor Dispute Form Letters were in every respect fraudulent insofar as Defendants asserted non-existent disputes to the creditors of Ms. Rhodes.

74.     As a salient but not isolated example, in the August 18, 2014 letter to AT&T Universal Card, Defendants challenged a charge by the long-time dentist of Ms. Rhodes, Dr. Thomas Curtis, in the amount of $2,038.55.

75.     In each False Creditor Dispute Form Letter to the Rhodes Unsecured Creditors, Defendants represented to the creditor recipient the following:

> Further, per Regulation Z Section 226.13(a)(7) you have failed to
> mail a periodic statement to the last known address for our client
> and thus all charges for the last 60 days are disputed.

("Periodic Statement Misrepresentation")

76.     Prior to the transmission of the False Credit Dispute Form Letters by Defendants, Ms. Rhodes had provided to Defendants copies of her current credit card statements from each of the respective Rhodes Unsecured Creditors. Accordingly, Defendants were well aware that Ms. Rhodes was receiving monthly statements from each of her three credit card providers to the extent that the Periodic Statement Misrepresentation was a materially false, deceptive and misleading statement to the Rhodes Unsecured Creditors.

77.     Ms. Rhodes was not aware that Defendants sent the False Creditor Dispute Form Letters. Indeed, Ms. Rhodes had absolutely no discussion with Defendants or with any of their agents that made mention of disputing any particular credit card charges. To the best information of Ms. Rhodes, the word processor at the Processing Center Location arbitrarily picked entries from her credit card statements to create a false dispute.

78.     Defendants did not provide a copy of the False Creditor Dispute Form Letters to Ms. Rhodes at the time they were sent, but rather Ms. Rhodes obtained a copy of same after repeated demands made by her counsel of record upon Defendants immediately prior to the filing of the instant action.

79.     Ms. Rhodes became greatly embarrassed when she learned for the first time that Defendants had disputed a charge to her dentist of many years without her permission, consent or knowledge. If Ms. Rhodes had learned that Defendants were creating fictitious disputes with respect to her credit card usage in order to fabricate a "billing error dispute" under the FCBA,

Ms. Rhodes would have immediately terminated the representation by Defendants and reported them to the Florida Bar.

### b.  As to Consumer Reporting Agencies

80.     With respect to the consumer reporting agencies, Defendants sent or caused to be sent letters dated September 18, 2014 to Equifax, Experian and Transunion ("False FCRA Dispute Letters").

81.     True and correct copies of the False FCRA Dispute Letters (with redacted personal information of Ms. Rhodes) are attached hereto and incorporated by reference as Composite Exhibit "F."

82.     As with the communications to the Unsecured Creditors of Ms. Rhodes, Defendants falsely represented to each of the consumer reporting agencies that "errors and inaccuracies" existed on the credit report of Ms. Rhodes with respect to each of the Rhodes Unsecured Creditors when no such "errors and inaccuracies" existed.

### 2.  "Defense" of Collection Lawsuit Against Ms. Rhodes

83.     On or about May 6, 2015, Capital One caused to be filed a collection lawsuit in that certain case styled "*Capital One Bank, (USA), N.A. v. Kathryn Rhodes*, in the District Court, 4th Judicial Circuit, in and for the County of Ada,  Case No. CV 0C 1507908" ("Idaho Collection Proceeding").

84.     After being served with the Summons and Complaint in the Idaho Collection Proceeding, Ms. Rhodes immediately contacted Defendants to inform Defendants that a lawsuit had been filed by Capital One and she needed immediate assistance in responding to same.

85.     In response to the phone call from Ms. Rhodes, Defendants through a staff

member informed Ms. Rhodes that Defendants would obtain "local legal representation" to assist Ms. Rhodes.

86.     Ms. Rhodes was greatly upset at the revelation by Defendants that Defendants were not able to represent her in the State of Idaho. As Ms. Rhodes had paid Defendants several thousand dollars, she had no choice but to acquiesce to Defendants' plan to obtain "local legal representation" to assist Ms. Rhodes.

87.     On Tuesday, May 19, 2015, a "legal assistant" at Fair Credit Law Group, Angelica Ramirez ("Ms. Ramirez"), emailed Ms. Rhodes concerning the representation of Ms. Rhodes in the Idaho Collection Proceeding ("Ramirez 5/19/15 Email").

88.     A true and correct copy of the Ramirez 5/19/15 Email is attached hereto and incorporated by reference as Composite Exhibit "G."

89.     Pursuant to the Ramirez 5/19/15 Email, Ms. Ramirez provided Ms. Rhodes with a document entitled "Defendant's Response to Claim" with the instruction to Ms. Rhodes that Ms. Rhodes should file same with the Court in the Idaho Collection Proceeding.

90.     The preparation of the form pleading constituted the unauthorized practice of law in the State of Idaho.

91.     Incredulously, Ms. Ramirez also instructed Ms. Rhodes to pay a filing fee of $136.00 to file the response, after Ms. Rhodes had already paid Defendants thousands of dollars for absolutely no meaningful legal work.

92.     On or about May 27, 2015, the Court having jurisdiction of the Idaho Collection Proceeding entered an order setting a scheduling conference for Thursday, June 25, 2015 ("Scheduling Conference").

93.     As the Scheduling Conference date approached,  Ms. Rhodes repeatedly telephoned and emailed Defendants as Ms. Rhodes was becoming extremely anxious and depressed at the lack of action by Defendants.

94.     In her telephone discussions with Fair Credit Law, Ms. Rhodes informed Fair Credit Law that she could not appear at the Scheduling Conference as Ms. Rhodes was housebound as a result of her disability.

95.     Instead of addressing the immediate concerns of Ms. Rhodes, Defendants instructed Ms. Rhodes to send a "hardship letter" to the Court to inform the Court of her disability and her inability to attend any court proceedings.

96.     After hearing the desperate plea of Ms. Rhodes for assistance, Defendants informed Ms. Rhodes that a "local attorney" would appear at the Scheduling Conference.

97.     No attorney appeared at the Scheduling Conference on behalf of Ms. Rhodes. Instead, the Court having jurisdiction of the Idaho Collection Proceeding entered *inter alia* an Outline of Trial Procedures for a Pro Se Party on June 25, 2015.

98.     On July 6, 2015, now exasperated and terrified, Ms. Rhodes faxed to Defendants a handwritten letter requesting that Defendants take action to defend the Idaho Collection Proceeding.

99.     No attorney "retained" by Defendants ever filed an appearance or otherwise defended the Idaho Collection Proceeding. Instead, Defendants contacted at least two different Idaho lawyers who apparently communicated with the attorneys representing Capital One to request that a default not be entered against Ms. Rhodes but did not appear of record in the Idaho Collection Proceeding.

100.     On September 20, 2015, Ms. Rhodes wrote to Attorney Brown and Attorney Friedman terminating her representation by Defendants ("Termination Letter").

101.     A true and correct copy of the Termination Letter is attached hereto and incorporated by reference as Exhibit "H."

102.     In order to avoid a default in the Idaho Collection Proceeding, Ms. Rhodes was required to retain local counsel on her own who negotiated a dismissal of the Idaho Collection Proceeding.

103.     Subsequent to the retention by Ms. Rhodes of Idaho counsel, Ms. Rhodes informed Defendants that she was terminating the Employment Agreement and demanded the return of all monies paid to Defendants.

104.     Notwithstanding the fact that Defendants performed no meaningful legal services on behalf of Ms. Rhodes, Defendants have refused to return any monies to Ms. Rhodes without good cause or justification.

105.     Defendants received Nine Thousand Seven Hundred Dollars ($9,700.00) as compensation before services were fully performed by Defendants.

### 3. Unconscionable Terms of Attorney Employment Agreement

#### a. Contractual Language to Avoid Accountability by Defendants

106.     The employment agreement used by Defendants allowed Defendants to charge unconscionable fees for doing little or no meaningful legal work. In order to prevent harmed consumers such as Ms. Rhodes from obtaining meaningful legal recourse against Defendants, Defendants installed unconscionable and adhesive contractual provisions in the Employment Agreement.

107.    Notwithstanding the fact that Defendants advertised their services outside the

State of Florida, Defendants installed into the Employee Agreement the following provision:

> 2a.    This Agreement will take effect upon the execution of it by
> both parties, i.e., at a time when both parties have signed it.
> This Agreement is entered into in Broward County, Florida
> and governed by the Laws of the State of Florida.
>
> ("Choice of Law Provision")

108.    In addition to the Choice of Law Provision, despite the marketing of services to

persons outside of Florida, the Defendants installed in the Employment Agreement a venue

provision as follows:

> 8d.    . . . The laws of the state of Florida govern this agreement and any
> litigation that may ensue will be exclusively in the Venue of
> Broward county Florida, irrespective to the place of residence or
> domicile.
>
> ("Venue Provision")

109.    In order to prevent the joinder of claims by consumers such as Ms. Rhodes,

Defendants installed a "class action waiver" in paragraph 8d of the Employment Agreement:

> Client agrees that the legal services being rendered are personal in
> nature and are being offered at a discount, and therefore agrees to
> not participate in any class action lawsuit whatsoever in connection
> with this agreement.
>
> ("Class Action Waiver Provision")

110.    The Class Action Waiver Provision falsely, deceptively and misleadingly

represented to Ms. Rhodes and others similarly situated that the legal services were offered at a

discount when in fact the legal fees were unconscionably high in light of the"legal services"

actually provided.

111.    The Choice of Law Provision, Venue Provision, and the Class Action Waiver

Provision constitute unconscionable and unenforceable terms for the employment of attorneys under the laws of both the State of Idaho and State of Florida.

### b. Refusal to Provide Accounting by Defendants

112.    Paragraph 7b of the Employment Agreement provides:

> Client may terminate this Agreement for cause, contingent on legal service payments being current. Termination under this provision shall be in writing. Attorney shall retain fees that correspond with billable hours. Client may receive a final billing statement with outstanding charges or outstanding billable hours.

("Billable Hours Accounting Provision")

113.    Prior to the filing of the instant action, Ms. Rhodes through her attorney of record demanded Defendants provide time records to document the exorbitant and unconscionable fees charged to Ms. Rhodes.

114.    Defendants failed to provide time records to Ms. Rhodes despite the contractual obligation to do so under the Billable Hours Accounting Provision.

115.    By information and belief, Defendants do not maintain contemporaneous time records as no meaningful legal work was performed by Defendants in the representation of Ms. Rhodes.

### F. VIOLATION OF FLORIDA RULES OF PROFESSIONAL CONDUCT WITH RESPECT TO LEGAL SERVICES

116.    In contravention of Rule 4-1.5(a), Rules Regulating the Florida Bar, Defendants as attorneys entered into an agreement for, charged or collected illegal, prohibited  or clearly excessive fee or cost or a fee generated by employment that was obtained through advertising not in compliance with the Rules Regulating the Florida Bar.

117.    The fees charged and collected by Defendants were unreasonable after a

consideration of all factors set forth in Rules 1.5(b) and (c), Rules of Professional Conduct, Rules Regulating the Florida Bar.

### G.   DAMAGES OF MS. RHODES

118.    The conduct of Defendants has caused Ms. Rhodes great actual economic and non-economic harm and injury.

119.    The economic damages of Ms. Rhodes include the monies paid to Defendants and damage to the credit and credit reputation of Ms. Rhodes.

120.    The non-economic intangible damages of Ms. Rhodes include but is not limited to personal humiliation, exasperation, fear and apprehension, embarrassment, depression, outrage, mental anguish, emotional distress, anger, physical and mental pain and suffering.

### COUNT I - ACTION FOR VIOLATION OF
### THE FEDERAL CREDIT REPAIR ORGANIZATIONS ACT

121.     This is an action for violation of 15 U.S.C. §1679b, *et. sequi*, known more commonly as the "Federal Credit Repair Organizations Act" ("CROA").

122.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 120 above as if set forth hereat in full.

123.    At all times material hereto, Ms. Rhodes was a "consumer" as said term is defined under 15 U.S.C. §1679a(1).

124.    At all times material hereto, Defendants were a "credit repair organization" as said term is defined under 15 U.S.C. §1679a(3).

125.    At all times material hereto, Defendants were persons who used any instrumentality, interstate commerce or the mail to sell, provide or perform (or represents that such person can or will sell, provide or perform) any service in return for the payment of money

or the value of consideration for the express or implied purpose of:

> (a)     improving the credit, credit history or credit rating of a consumer; or

> (b)     providing advice or assistance to consumers with regard to any activity or

service which includes the credit record, credit history and credit rating of the consumer.

126.    As a result of the acceptance of the Monthly Installment Payment, Defendants received consideration from Ms. Rhodes prior to the performance of "any service" which Defendants had agreed to perform for Ms. Rhodes as a consumer before such service was fully performed in contravention of 15 U.S.C. § 1679b(b).

127.    Defendants have violated the provisions of 15 U.S.C. §1679c in that Defendants did not provide a prior written statement advising Ms. Rhodes of her rights as a consumer under state and federal law prior to the execution of the Employment Agreement.

128.    Defendants have violated the provisions of 15 U.S.C. §1679e in failing to provide the required cancellation form.

129.    Defendants have violated the provisions of 15 U.S.C. §1679d in that Defendants did not obtain from Ms. Rhodes a written and dated contract with the terms and provisions required in said subsection of CROA.

130.    As a direct and proximate result of the violation of CROA by Defendants, Ms. Rhodes has been damaged.

131.    Pursuant to 15 U.S.C. §1679g(a)(1), Ms. Rhodes is entitled to recover the amount of any actual damages sustained by Ms. Rhodes or the amount paid by Ms. Rhodes to Defendants as a credit repair organization.

132.    Pursuant to 15 U.S.C. §1679g(a)(2), Ms. Rhodes is entitled to punitive damages

in an amount as the Court may allow.

133.     Pursuant to 15 U.S.C. §1679g, Ms. Rhodes is entitled to recover reasonable attorney's fees in the bringing of the instant action.

134.     Ms. Rhodes has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual,  Robert A. Friedman, an individual,  John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, for:

A.     Actual and punitive damages to be established at trial pursuant to 15 U.S.C. §1679g;

B.     Costs and reasonable attorney's fees in accordance with 15 U.S.C. §1679g(a)(3); and

C.     Such other and further relief as justice may require.

## COUNT II - ACTION FOR VIOLATION OF THE FLORIDA CREDIT SERVICE ORGANIZATIONS ACT

135.     This is an action for violation of the Florida Credit Service Organizations Act, Florida Statute §817.7001, *et seq.*  ("Florida CROA"), brought herein pursuant to the doctrine of pendent jurisdiction.

136.     Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 120 above as if set forth hereat in full.

137.     At all times material hereto, Ms. Rhodes was a "buyer" as said term is defined

under Florida Statute §817.7001(1).

138.    At all times material hereto, Defendants were a "credit service organization" as said term is defined under Florida Statute §817.7001(2)(a).

139.    At all times material hereto, the monies owed to the Rhodes Unsecured Creditors constituted a "extension of credit" as said term is defined under Florida Statute §817.7001(3).

140.     Defendants have violated Florida CROA in the following respects:

A.    <u>By Obtaining Consideration Prior to Full and Complete Performance</u> - Defendants have obtained valuable consideration prior to the full and complete performance of the services which Defendants as a credit service organization had agreed to perform in violation of Florida Statute §817.7005(1);

B.    <u>By Making a False Statement to Creditor</u> - Defendants have made a statement that is false and misleading or that should be known by the exercise of reasonable care to be false or misleading, or omitted material facts to the Rhodes Unsecured Creditors as a person which has extended credit to Ms. Rhodes in violation of Florida Statute §817.7005(3);

C.    <u>By Commission of Fraud</u> - Defendants have made or used a false or misleading representation or omitted material facts in the offer of sale of their services as a credit service organization or engaged, directly or indirectly, in an act, practice or course of business that operate or would operate as a fraud or deception upon Ms. Rhodes or other persons in connection with their offer or sale of services as a credit service organization in violation of Florida Statute §817.7005(4).

141.    The Defendants have violated the provisions of Florida Statute §817.702 in that Defendants did not provide a written statement to Ms. Rhodes as buyer which contained the

information required by Florida Statute §817.703.

142.    The Defendants have violated the provisions of Florida Statute §817.704 in that Defendants did not obtain from Ms. Rhodes a written and dated contract with the terms and provisions required by Florida CROA.

143.    As a direct and proximate result of the violations of the Florida CROA, Ms. Rhodes has been damaged.

144.    Pursuant to Florida Statute §817.706,  Ms. Rhodes is entitled to recover actual damages, but in no case less than the amount paid by Ms. Rhodes to Defendants, plus reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities,  for damages, together with interest, costs and attorney's fees pursuant to Florida Statute §817.706.

## COUNT III - ACTION FOR VIOLATION OF THE TELEMARKETING AND CONSUMER FRAUD AND ABUSE PREVENTION ACT

145.    This is an action for violation of 15 U.S.C. §6101, *et seq.*, known more commonly as the "Telemarketing and Consumer Fraud and Abuse Prevention Act," ("Telemarketing Act").

146.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 120 above as if set forth hereat in full.

147.    At all times material hereto, Ms. Rhodes was a "customer" as said term is defined

under 16 C.F.R. §310.2 (n).

148.    At all times material hereto, the business activities of Defendants constituted a "debt relief service" as said term is defined under 16 C.F.R. §310.2(o).

149.    At all times material hereto, Defendants were "seller(s)" with respect to debt relief services offered to Ms. Rhodes as said term is defined under 16 C.F.R. §310.2(aa).

150.    In 2010, the FTC issued Telemarketing Sales Rules ("TSR") which imposes specific restrictions and requirements on debt relief services such as credit counseling, debt settlement, debt negotiation, and debt elimination companies, including attorneys.

151.    Pursuant to 16 C.F.R. §310.6(b)(5) and (6), TSR applies to the debt relief services and the sellers who advertise on the internet when the consumer responds by telephone.

152.    Defendants have violated the TSR with respect to its services to Ms. Rhodes in the following respects:

(a)  by requesting and receiving payment of any fee in consideration for debt relief service before achieving any result in contravention of 16 C.F.R. §310.4(a)(5)(i);

(b)  by failing to escrow fees in contravention of 16 C.F.R. §310.4(a)(5)(ii); and

(c)  by misrepresenting any debt relief service provided by Defendants in contravention of 16 C.F.R. §310.3(a)(2)(x).

153.    Defendants have maintained a practice and pattern of telemarketing which violates the TSR.

154.    As a direct and proximate result of the violation of the TSR, Ms. Rhodes has sustained actual economic and non-economic damages in excess of Fifty Thousand Dollars,

($50,000.00).

155.    Prior to the filing of the instant action, Ms. Rhodes provided a copy of the Complaint to the FTC pursuant to 15 U.S.C. §6104(b).

156.    Pursuant to 15 U.S.C. §6104(d), Ms. Rhodes is entitled to the recovery of attorney's fees and costs for the bringing of the instant action.

157.    Ms. Rhodes has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual,  John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, for:

A.    Actual damages to be established at trial pursuant to 15 U.S.C. §6104(a);

B.    Injunctive relief against Defendants prohibiting further violations of the TSR as described above pursuant to 15 U.S.C. §6104(a);

C.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §6104(d); and

D.    Such other and further relief as justice may require.

### COUNT IV - ACTION FOR VIOLATION OF THE
### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

158.    This is an action for violation of Florida Statute §501.201, *et sequi,* known more commonly as the "Florida Deceptive and Unfair Trade Practices Act" (the "DUTPA") brought herein pursuant to the pendent jurisdiction of the Court.

159.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1

through 120 above as if set forth hereat in full.

### *General Allegations as to DUTPA*

160.    At all times material hereto, Ms. Rhodes was an "interested party or person" as said term is defined under Florida Statute §501.203(6).

161.    By virtue of the acts described above, Defendants were engaged in "trade or commerce" as said term is defined under Florida Statute §501.203(8).

### *Violation of the Telemarketing Sales Rule*

162.    At all times material hereto, Ms. Rhodes was a "customer" as said term is defined under 16 C.F.R. §310.2 (n).

163.    At all times material hereto, the business activities of Defendants constituted a "debt relief service" as said term is defined under 16 C.F.R. §310.2(o).

164.    At all times material hereto, Defendants were "seller(s)" with respect to debt relief services offered to Ms. Rhodes as said term is defined under 16 C.F.R. §310.2(aa).

165.    In 2010, the FTC issued Telemarketing Sales Rules ("TSR") which imposes specific restrictions and requirements on debt relief services such as credit counseling, debt settlement, debt negotiation, and debt elimination companies, including attorneys.

166.    Pursuant to 16 C.F.R. §310.6(b)(5) and (6), TSR applies to the debt relief services and the sellers who advertise on the internet when the consumer responds by telephone.

167.     Defendants have violated the TSR with respect to its services to Ms. Rhodes in the following respects:

(a)   By requesting and receiving payment of any fee in consideration for debt

relief service before achieving any result in contravention of 16 C.F.R.

§310.4(a)(5)(i);

(b) by failing to escrow fees in contravention of 16 C.F.R. §310.4(a)(5)(ii); and

(c) by misrepresenting any debt relief service provided by Defendants in

contravention of 16 C.F.R. §310.3(a)(2)(x).

168.    The violation of the TSR is a per se violation of the DUTPA pursuant to Florida

Statute §501.211(3)(c).

### *Violation of the FDUTPA as to Senior Citizens and Persons of Disabilities*

169.    At all times material hereto, Ms. Rhodes was a "person who has a disability" as

said term is defined under Florida Statute §501.2077(1)(d).

170.    At all times material hereto, Ms. Rhodes was a "senior citizen" as said term is

defined under Florida Statute §501.2077(1)(e).

171.    Pursuant to Florida Statute §501.2077, Defendants willfully used a method, act or

practice in violation of DUTPA which victimized or attempted to victimize a senior citizen or

person who has a disability.

172.    As a direct and proximate result of the above described acts, Defendants are liable

for a civil penalty of not more than Fifteen Thousand Dollars ($15,000.00) for each such

violation if he or she knew or should have known that his or her conduct was unfair or deceptive

pursuant to Florida Statute §501.2077(2).

*                    *                    *

173.    As more particularly described above, Defendants have engaged in unfair methods

of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the

conduct of trade or commerce in violation of Florida Statute §501.204(1) and (2).

174.     Pursuant to Florida Statute §501.211, Ms. Rhodes  is entitled to obtain a declaratory judgment that the acts and practices of Defendants under the DUTPA and to enjoin Defendants from further violations of the DUTPA.

175.     It is in the interest of protection of consumers that the Defendants be prohibited and proscribed from further violations of the DUTPA as described above.

176.     As a direct and proximate result of the violation of the DUTPA, Ms. Rhodes has been damaged and is an aggrieved person.

177.     Ms. Rhodes has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC,"  Joel A. Brown, an individual, and Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, for:

A.     Compensatory economic damages;

B.     Declaratory relief against Defendants adjudicating that the actions of Defendants described above constitute violations of the DUTPA;

C.     Injunctive relief against Defendants proscribing Defendants from further violations of the DUTPA as described herein; and

D.     Attorney's fees and court costs pursuant to Florida Statute §501.2105.

## **COUNT V - ACTION FOR BREACH OF CONTRACT**

178.     This is an action for breach of contract brought herein pursuant to the pendent

jurisdiction of the Court.

179.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 120 above as if set forth hereat in full.

180.    By failing to provide any meaningful legal services on behalf of Ms. Rhodes, Defendants have breached the terms and provisions of the Employment Agreement.

181.    As a result of the breach of the Employment Agreement, Ms. Rhodes has been damaged.  The damages of Ms. Rhodes include the loss of monies paid to Defendants together with damage to her credit and credit reputation.

WHEREFOR, Plaintiff, Kathyn M. Rhodes, an individual, demands judgment against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, and Robert A. Friedman, an individual, jointly and severally, together with interest costs and attorney's fees.

## COUNT VI - ACTION FOR FRAUD

182.    This is an action for fraud brought herein pursuant to the pendent jurisdiction of the Court.

183.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 120 above as if set forth hereat in full.

184.    As more fully described above, Defendants misrepresented material facts and made material omissions concerning the services to be provided by Defendants.

185.    Defendants knew that the representations set forth above were false or made such representations recklessly, and Defendants had no reasonable grounds for believing those representations to be true.

186.    Defendants knew that the above representations and omissions concerning the services of Defendants were material and important.

187.    Defendants intended to deceive Ms. Rhodes, who relied upon the misrepresentations and omission to her detriment.

188.    As a direct and proximate result of the fraud and non-disclosures by Defendants, Ms. Rhodes has suffered actual damages as described herein.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment for actual and punitive damages against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, together with interest and costs.

## COUNT VII - ACTION FOR NEGLIGENT MISREPRESENTATION

189.    This is an action for negligent misrepresentation brought herein pursuant to the pendent jurisdiction of the Court.

190.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 120 above as if set forth hereat in full.

191.    As more particularly described above, Defendants misrepresented and failed to disclose material facts concerning the services to be provided by Defendants.

192.    Defendants believed the above statements to be true and to be complete but which were in fact false and incomplete.

193.    Defendants were negligent in making the statements and omissions concerning the services of Defendants.  Defendants should have known that the statements were false.

194.    Defendants, in making the statements concerning the services of Defendants, intended that Ms. Rhodes rely upon said statements.

195.    As a direct and proximate result of the negligent misrepresentations of the Defendants, Ms. Rhodes has suffered actual damages as described above.

WHEREFORE, Plaintiff, Kathryn Rhodes, an individual, demands judgment for damages against Defendants,  Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, together with interest and costs.

## COUNT VIII- ACTION FOR FRAUDULENT INDUCEMENT

196.    This is an action for fraudulent inducement brought herein pursuant to the pendent jurisdiction of the Court.

197.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 120 above as if set forth hereat in full.

198.    As more particularly described above, Defendants induced Ms. Rhodes into signing the Employment Agreement by knowingly making misrepresentations of material fact and omitting material facts with the intent that Ms. Rhodes rely on them to her detriment.

199.    Defendants' misrepresentations of material fact and omissions of material fact were made and omitted with the intent that Ms. Rhodes rely on them, or be deceived by them to her detriment.

200.    Ms. Rhodes justifiably relied upon the misrepresentations to her detriment and further, had Ms. Rhodes been advised of the truth, Ms. Rhodes would not have entered into the

Employment Agreement.

201.    As a result of the fraud and deceit by Defendants, Ms. Rhodes has suffered actual damages as described above.

WHEREFORE, Plaintiff, Kathryn Rhodes an individual, demands judgment for compensatory and punitive damages against  Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities,  together with interest and costs.

## COUNT IX - ACTION FOR UNJUST ENRICHMENT

202.    This is an action for unjust enrichment brought herein pursuant to the pendent jurisdiction of the Court.

203.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 120 above as if set forth hereat in full.

204.     Ms. Rhodes has conferred a benefit on Defendants by paying for services offered by Defendants.

205.    Defendants have knowledge of the benefit conferred by Ms. Rhodes.

206.    Defendants have accepted and/or retained the benefit conferred by Ms. Rhodes.

207.    The circumstances are such that it would be inequitable for Defendants to retain the benefits without paying the fair value thereof.

208.    Defendants have been unjustly enriched by the retention of the benefits paid by Ms. Rhodes.

WHEREFORE,  Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly

and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability

company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A.

Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10,

unknown business entities,  for damages, interest, and costs, and for such other and further relief

as justice may require.

### COUNT X - ACTION FOR CIVIL CONSPIRACY

209.     This is an action for civil conspiracy brought herein pursuant to the pendent

jurisdiction of the Court.

210.     Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1

through 120 above as if set forth hereat in full.

211.     As more particularly described above, an agreement existed between the

respective Defendants to do an unlawful act or to do a lawful act by unlawful means, to-wit: the

charging of an unlawful and unconscionable fee for "legal services" not in compliance with

applicable federal and state laws.

212.     As a result of the conspiracy between the respective Defendants to violate federal

and state consumer protection laws, Ms. Rhodes has been damaged as more particularly

described above.

WHEREFORE,  Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly

and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability

company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A.

Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10,

unknown business entities,  for actual and punitive damages, interest, costs, and attorney's fees

as permitted by law and for such other and further relief as justice may require.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Kathryn M. Rhodes, an individual,  pursuant to Rule 38(b), Federal Rules of

Civil Procedure, demands a trial by jury of all issues so triable.

/s/ Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660
(954) 763-8607 (FAX)
Email: rphyu@aol.com  — and—
rwmurphy@lawfirmmurphy.com

COUNSEL FOR PLAINTIFF