## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-CV-61643-Moreno/Sullivan

KATHRYN M. RHODES, an individual,

      Plaintiff,

vs.

THE FAIR CREDIT LAW GROUP, LLC, a Florida limited
liability company, d/b/a "Fair Credit Law Group, LLC,"
JOEL A. BROWN, an individual, ROBERT A. FRIEDMAN,
an individual, JOHN DOE 1-15, unknown individuals, and
JOHN DOE CORPORATIONS 1-10, unknown business
entities,

      Defendants.

_____/

### SECOND AMENDED COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

      Plaintiff, Kathryn M. Rhodes, an individual, by and through her undersigned attorney,

sues Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, doing

business as "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman,

an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown

business entities, and alleges:

### *INTRODUCTION*

      1.    This lawsuit involves claims by an impoverished, disabled woman in Idaho who

was deceived into paying a substantial sum of money to lawyers in Florida with the expectation

that Defendants would relieve her of her debt burdens and improve her credit by asserting

various defenses — which are now revealed to be fictitious — to her credit obligations.

      2.    As detailed below, under the guise of providing legal services, Defendants

operated an advance fee scheme designed to extract attorney's fees regardless of whether any useful services were performed. As a result of the bogus credit services program operated by Defendants, Ms. Rhodes found herself in greater financial difficulty with defaulted debt obligations and further impaired credit than she had before she encountered Defendants.

## JURISDICTION

3.       The jurisdiction of this Court is established pursuant to 15 U.S.C. §1679, *et sequi*, known more commonly as the "Federal Credit Repair Organizations Act" ("CROA"), and 15 U.S.C. §6101, *et sequi*, known more commonly as the "Federal Telemarketing and Consumer Fraud and Abuse Prevention Act," and with respect to state law claims pursuant to the pendent jurisdiction of this Court pursuant to 28 U.S.C. §1367.

## ALLEGATIONS AS TO PARTIES

4.       At all times material hereto, Plaintiff, Kathryn M. Rhodes ("Ms. Rhodes"), was *sui juris* and a resident of Boise, Ada County, Idaho.

5.       At all times material hereto, Defendant, The Fair Credit Law Group, LLC, doing business as "Fair Credit Law Group, LLC" ("Fair Credit Law"), was a Florida limited liability company doing business at 3389 Sheridan Street #245, Hollywood, Florida 33021.

6.       At all times material hereto, Defendant, Joel A. Brown ("Mr. Brown" or "Attorney Brown"), was *sui juris* and a resident of Broward County, Florida.

7.       At all times material hereto, Defendant, Robert A. Friedman ("Mr. Friedman" or "Attorney Friedman"), was *sui juris* and a resident of Broward County, Florida.

8.       At all times material hereto, Mr. Brown and Mr. Friedman (collectively, "Individual Attorney Defendants") were the sole officers, directors, managers and control

persons of Fair Credit Law collectively and maintained complete authority and control over Fair

Credit Law to the extent that Fair Credit Law was the alter-ego and mere instrumentality of Mr.

Brown and Mr. Friedman.

9.      As detailed below, Mr. Brown, Mr. Friedman, Fair Credit Law, together with their

employees, agents, and representatives acting within the scope of their authority (collectively

"Fair Credit Law Group"), either directly participated in the wrongful conduct described below

or alternatively ratified such activity upon being informed of same.

10.     At all times material hereto, Defendants John Doe 1-15 ("Unknown Individual

Defendants"), were persons who directly participated or aided and abetted in the misconduct

described below but whose identities are currently known to Ms. Rhodes.

11.     At all times material hereto, Defendants John Doe Corporations 1-10 ("Unknown

Corporate Defendants"), were business entities which directly participated or aided and abetted

in the misconduct described below but whose identities are currently unknown to Ms. Rhodes.

12.     Through discovery, Ms. Rhodes shall identify the Unknown Individual

Defendants and Unknown Corporate Defendants (collectively "Unknown Defendants"), and shall

amend her pleadings to name and serve same.

## FACTUAL ALLEGATIONS

### A.  FRAGILE FINANCIAL CIRCUMSTANCES OF MS. RHODES

13.     For the past several years, Ms. Rhodes has been living on the thinnest of financial

margins. As the result of a sports injury that severely damaged her spine, Ms. Rhodes has been

largely confined to her home and has been unable to work.  Accordingly, the only source of

income of Ms. Rhodes is a small Social Security disability check each month together with food

stamps and needs-based public assistance.

14.     Despite her best efforts, Ms. Rhodes found it increasingly difficult to keep pace with her bills to the extent that her credit card accounts began to have ever larger balances.

### B.  USE OF "LAWYER REFERRAL SERVICE" TO ENSNARE UNSUSPECTING OUT-OF-STATE CONSUMERS

#### 1.  Introduction

15.     In an effort to find a solution to her financial problems, Ms. Rhodes searched the internet for "professionals" to assist in her credit problem. While perusing the internet, Ms. Rhodes viewed a website maintained by an entity known as the "Lawyer Referral Network, LLC" or one of its successors or affiliates  (collectively "LRN").

16.     Based on the information currently available to Ms. Rhodes, LRN is a for-profit lawyer referral service located at 7000 W. Palmetto Park Road, Suite 402, Boca Raton, Florida 33433 ("Processing Center Location").

17.     When Ms. Rhodes contacted LRN, Ms. Rhodes spoke to an individual who identified himself as "David Block" ("Mr. Block") and who stated that he would be the "consumer protection coordinator" for Ms. Rhodes.

#### 2.  Initial "Sales Pitch" and Marketing Practices of Defendants

##### a.  Deception Concerning Experience and Reputation of Defendants

18.     In the initial conversation with Mr. Block, Ms. Rhodes informed Mr. Block of the following:

- that she was a resident of Boise, Idaho;

- that she was a senior citizen with limited Social Security disability income;

- that she had approximately $52,000 in unsecured credit card debt that she was having difficulty in paying; and

- that she was concerned about maintaining her credit and credit reputation.

19. Mr. Block affirmatively stated to Ms. Rhodes that "a panel of attorneys" would be able to resolve her debt problem and that a "qualified attorney" would be able to assist her.

20. As a follow-up to the telephone discussion with Ms. Rhodes, on June 12, 2014, Mr. Block emailed Ms. Rhodes with respect to the "qualified attorney" referrals ("Block Lawyer Referral Email").

21. The Block Lawyer Referral Email is set forth in its entirety below:

From: Lawyer Referral Network

Sent: Jun 12, 2014 6:54 AM

To: bcrhodes@mindspring.com

Subject: Requested Information

Hello,
Thank you for taking the time to share your current situation with us. As promised, we have attached the panel member's credentials for you to review. The seasoned panel of attorneys that we can refer you to have all had prior accomplishments that show their high ethical standards and professional ability. Some of the Awards & Achievements received by these panel members include but are not limited to: achieving the Martindale Hubbell Award consecutively for 28-years. Being appointed unanimously by the U.S. Senate to be Special Counsel for the justice department; As well as many guest appearances on news broadcasts to bring knowledge to consumers about how to get help with the abusive banking tactics and credit bureau reporting errors. There are several websites for the attorneys that you can review. Feel free to look at these Websites & Credentials by clicking the links below:

Websites-
www.paherman.com
www.faircreditlawgroup.com
www.advocacygrouplawfirm.com

Additional Credentials and prior accomplishments-
News & Media- news & media
AVVO- Paul Herman- AVVO
Department of Justice- www.justice.gov
  whitehouse.archives.gov

Following is the contact information for the Consumer Protection
Coordinator with whom you spoke.  Please make yourself available
for the scheduled appointment and be sure to contact the
Coordinator in advance if you are unable to keep the scheduled
time. Please be sure to have any requested information available
for discussion that may be pertinent to your case.

Best Regards,
David Block
Consumer Protection Coordinator
Department of Agriculture and Consumer Services License #
TP23265
561-880-8876 Direct Phone
561-750-0593 Fax
davidb@thelrn.com

Thank you for your time and we look forward to assisting you.

("Referral Panel Qualification Representation")

22.     In the Block Lawyer Referral Email, Mr. Block called himself a "consumer

protection coordinator" with a "license" number, insinuating that Mr. Block was a "licensed"

consumer protection coordinator when in reality the license number was merely for "commercial

telephone salesperson" license issued by the Florida Department of Agriculture and Consumer

Services.

23.     According to the Block Lawyer Referral Email, the "referral panel" consisted of a

total of three law firms, all of which were located in the State of Florida, inclusive of Fair Credit

Law Group.

b.  *Deceptive Internet Advertising by Defendants*

24.     Despite the fact that Ms. Rhodes was a resident of Idaho, LRN "referred" Ms. Rhodes to Fair Credit Law – a Florida law firm without any attorneys licensed to practice law in Idaho.

25.     In order to induce Ms. Rhodes and others into retaining Defendants, Defendants maintained advertisements and websites that described the background and experience of Mr. Brown and Mr. Friedman, who were directly involved in the marketing of the legal services of Defendants.

26.     In describing the services provided to persons such as Ms. Rhodes, Defendants represented *inter alia* the following at  www.faircreditlawgroup.com website:

> It's time to protect your rights with an experienced attorney, not a paralegal.
>
> ("Attorney Meaningful Involvement Representation")

27.     The Attorney Meaningful Involvement Representation was materially false, deceptive and misleading insofar as it was the intention of Defendants to have non-lawyers at the Processing Center Location perform the ministerial function of fabricating its letters to the creditors, consumer reporting agencies and other third parties as opposed to having Mr. Brown or Mr. Friedman meaningfully involved as attorneys in the representation of Ms. Rhodes.

28.     At  www.manta.com /c/cmrprp0d/v-fair-credit-law-group-llc website, Defendants represented :

> About The Fair Credit Law Group, LLC
>
> **Consumer litigation law firm protecting individuals in debt and credit fields. We sue debt collectors, fix credit reporting errors, file bankruptcy.**

*Page 7 of  40*

The Fair Credit Law Group was formed to protect the rights of individual consumers against corporate abuses found in the consumer credit and debt fields. Our goal is to provide the most comprehensive and complete consumer law protection to all individuals through our experienced and talented litigation team. We are the only firm in South Florida that can provide such a wide array of consumer services and our lawyers have over 60 years of litigation experience. We can sue creditors and many times erase your debt and get money back for you. **We can fix your credit and have multiple lawsuits against the credit reporting agencies.** We can defend you in court in credit card lawsuits. We can file bankruptcy. We can also handle any commercial litigation need you or your company has.

[Underlining by Plaintiff; bold print in original]
("Credit Restoration Experience and Ability Representation")

29.     The Credit Restoration Experience and Ability Representation was materially false, deceptive and misleading in that Defendants were not the "only law firm in South Florida" involved in consumer protection.

30.     The Credit Restoration Experience and Ability Representation by Defendants was materially false, deceptive and misleading in that the only attorneys employed by Fair Credit Law Group — Mr. Brown and Mr. Friedman — had substantially less than "60 years of litigation experience."

31.     The Credit Restoration Experience and Ability Representation by Defendants was materially false, deceptive and misleading in that Defendants failed to inform Ms. Rhodes that Defendants could not represent Ms. Rhodes in litigation in the State of Idaho without an attorney licensed in the State of Idaho.

32.     The Credit Restoration Experience and Ability Representation by Defendants was materially false, deceptive and misleading in that Defendants stated Defendants could "fix (her) credit" when Defendants did not have the ability to ameliorate derogatory credit reporting in the absence of inaccurate or obsolete information being reported to the credit reporting agencies.

33.     The Credit Restoration Experience and Ability Representation by Defendants was materially false, deceptive and misleading as Defendants stated that Defendants had "multiple lawsuits against credit reporting agencies" when Defendants did not have any pending litigation against the credit reporting agencies at the time of the representation by Defendants and Defendants had limited experience in litigation against credit reporting agencies based on a review of the Public Access to Court Electronic Records ("PACER") system.

34.     At www.goodlifecredit.com website, Defendants represented:

The directing attorneys, Robert Friedman and Joel Brown, each have over ten years experience at being at the leading edge of litigation in the credit reporting field....  Good credit life can find the best way to legally challenge negative items (sic) affecting your score. **The Attorneys have seen it all and have helped to get virtually every kind of negative item removed from credit files** ...

> [emphasis added by Plaintiff]
> ("Credit Litigation Experience Representation")

35.     The Credit Litigation Experience Representation by Defendants was materially false, deceptive and misleading in that the representation that Defendants could "get virtually every kind of negative item removed from credit files" was a blatant misrepresentation of the ability of any attorney to perform such services in a lawful manner under the Fair Credit Reporting Act. The Defendants knew that only inaccurate or obsolete information could be lawfully removed from consumer files but failed to disclose such facts in the Credit Litigation Experience Representation.

36.     The Credit Litigation Experience Representation by Defendants was materially false, deceptive and misleading as the Defendants implied that accurate credit information in a consumer could be lawfully removed as a result of the efforts of Defendants.

*c.  Deception by Defendants with Respect to Ability to Act as Attorneys in Idaho*

37.      Notwithstanding the fact that no attorney of Fair Credit Law was a member of the Idaho Bar or was authorized to practice in state or federal court in the State of Idaho, Defendants through LRN, on or about June 16, 2014, provided Ms. Rhodes with a so-called "Case File Creation Packet" which included *inter alia*:

- an undated letter addressed to "Dear Valued Client" ("Introduction Letter"), a true and correct copy of which is attached hereto and incorporated by reference as Exhibit "A;" and

- a document entitled "Legal Services Agreement" ("Employment Agreement"), a true and correct copy (with handwritten notations by Ms. Rhodes) of which is attached hereto and incorporated by reference as Exhibit "B."

38.      The Introduction Letter informed Ms. Rhodes that she had been assigned a "dedicated legal assistant" by the name of "Sandy Harris" who would be Ms. Rhodes' "main point of contact" ("Ms. Harris").

39.      Ms. Harris was not an employee of Fair Credit Law but rather an employee of an entity known as "Outsourced Legal Services, LLC" ("Outsource Legal") which was located at the Processing Center Location.

40.      By information and belief, the Processing Center Location and/or Outsource Legal was a business operated by LRN or some other non-lawyer entity which collected and split fees with Defendants.

41.      Pursuant to the Introduction Letter, Defendants stated that Fair Credit Law

employed attorneys licensed  outside the state of Florida. In particular, Defendants represented the following:

> THIS LAW FIRM EMPLOYS ONE OR MORE ATTORNEYS ADMITTED TO PRACTICE IN THE FOLLOWING STATES: AL, AR, AZ, CA, CO, CT, DC, FL, GA, IA, ID, IL, IN, KS, KY, LA, MA, MD, ME, MI, MN, MO, MS, NC, NE, NH, NJ, NM, NV, NY, OH, OK, OR, PA, RI, SC, TN, TX, VA, VT, WA, WI, WV, WY

> ("Nationwide Law Firm Representation").

42.     The Nationwide Law Firm Representation was materially false, deceptive and misleading in that Defendants did not have employees who were attorneys admitted outside the State of Florida as set forth in the National Law Firm Representation, and most notably Idaho.

### C.   EMPLOYMENT OF FLORIDA LAWYERS TO PERFORM LEGAL SERVICES FOR IDAHO RESIDENT

#### 1.   Terms of Employment

43.     Pursuant to the Employment Agreement, Defendants agreed to *inter alia* to perform the following services:

1. Scope of Legal Representation.

   a.   The Legal Service(s) that attorney has represented to provide are as follows:

   i.   To validate, dispute, and/or litigate or arbitrate all of the consumer's accounts listed in Exhibit "A" and to verify, dispute, and/or litigate and correct inaccurate or erroneous credit report related items and information with all credit reporting agencies, furnishers of information and creditors; in order to achieve a resolution of those accounts illustrated in Exhibit A. Resolution is defined in paragraph 1(c)(ii)....

   v.   To remit a letter to the three major credit reporting agencies indicating that the Client desires that the credit reporting agencies reinvestigate any inaccurate or derogatory information contained in the Client's consumer credit report.

> ("Credit Repair Provision")

44.     In reliance upon the various representations made by Defendants, Ms. Rhodes agreed to employ Defendants to assist her in dealing with her crushing credit problem.

45.     Pursuant to the Employment Agreement, Ms. Rhodes became obligated to pay Defendants the sum of Sixteen Thousand Five Hundred Dollars ($16,500.00) ("Credit Services Fee").

### 2.    Financing of Credit Services Fee

46.     In order to finance the Credit Services Fee, Defendants required that Ms. Rhodes – a person already burdened by significant consumer debt – execute an Installment Note ("Finance Agreement") in the principal amount of $16,500 ("Credit Services Promissory Note").

47.     A true and correct copy of the Credit Services Promissory Note is attached hereto and incorporated by reference as Exhibit "C."

48.     Pursuant to the Credit Services Promissory Note, Ms. Rhodes became obligated to pay Six Hundred Eighty Seven and 50/100ths Dollars ($687.50) per month ("Monthly Installment Payment") on the 15th day of each month.

49.     While the Defendants maintained their office at 3389 Sheridan Street, Suite 245, Hollywood, Florida 33021, Ms. Rhodes was required under the Credit Services Promissory Note to make her payments at the Processing Center Location to a third party, Harbinger Capital Group ("Harbinger Capital").

50.     The Individual Attorney Defendants knew that Harbinger Capital was a device to facilitate the division of fees between the Defendants and the non-lawyers, including the "referral service" –  LRN –  and the "back-office operation"- Outsource Legal.

51.     Prior to the time Ms. Rhodes entered into the Employment Agreement, Ms.

Rhodes had informed Defendants and LRN that she owed the following creditors ("Rhodes Unsecured Creditors") :

| Name of Creditor | Amount |
|---|---|
| U.S. Bank | $19,119.00 |
| Capital One Bank | $18,160.00 |
| AT&T Mastercard | $15,024.00 |
| Total: | $52,303.00 |

52.     Despite the fact that Defendants could not represent Ms. Rhodes in any legal proceeding to be filed against her by credit card providers without an Idaho attorney, Defendants charged ⅓ of the outstanding credit card balance of Ms. Rhodes for "legal services."

53.     In order to pay the Monthly Installment Payments to Defendants, Ms. Rhodes was required to stop making payments to her credit card providers, resulting in a default on her obligations to same.

54.     After entry into the Employment Agreement,  Ms. Rhodes faithfully paid each and every monthly installment payment in the belief that Defendants were providing meaningful legal services on her behalf to obviate her credit problem.

### E.   REVIEW OF WORTHLESS "LEGAL SERVICES" BY DEFENDANTS

#### 1.   Use of Bogus Form Letters

##### a.  To Creditors

55.     Instead of performing meaningful legal services on behalf of Ms. Rhodes, Defendants sent a series of mass-generated form letters ("Form Letters") to the creditors of Ms. Rhodes and the three national consumer reporting agencies ("CRAs") from the Processing Center Location.

56.     Each and every one of the Form Letters were purportedly signed by "Joel A. Brown and Robert Friedman, Esq." ("Facsimile Signature").

57.     The use of the Facsimile Signature was authorized by the Individual Defendant Attorneys in order to deceptively simulate that either Attorney Friedman or Attorney Brown were personally involved in the preparation and transmittal of the Form Letters when in fact, they were not.

58.     The Form Letters sent out by Defendants were purposefully staggered over a period of several weeks to give the false impression to Ms. Rhodes that the attorneys — Mr. Brown and Mr. Friedman — were actively involved in her representation when in fact Mr. Brown and Mr. Friedman had no meaningful involvement in the representation of Ms. Rhodes and that the credit relief services were progressing towards the objective of providing debt relief.

59.     To further their scheme to give the appearance of Defendants doing meaningful legal work on behalf of Ms. Rhodes, on or about July 17, 2014, the Defendants sent or caused to be sent from the Processing Center Location a form letter to each of the Rhodes Unsecured Creditors ("Representation Letters").

60.     A true and correct copy of the Representation Letters sent to AT&T Universal, Capital One Bank, and US Bank are attached hereto as Composite Exhibit "D."

61.     On August 18, 2014, Defendants sent or caused to be sent from the Processing Center Location a second form letter to each of the Rhodes Unsecured Creditors which was addressed in all-capital letter "BILLING ERRORS" ("False Creditor Dispute Form Letter").

62.     A true and correct copy of the False Creditor Dispute Form Letters (with redacted personal information of Ms. Rhodes) are attached hereto as Composite Exhibit "E."

63.     The False Creditor Dispute Form Letter falsely represented to the recipient creditor that a legitimate "billing error dispute" existed with respect to the subject credit line in order to trigger the obligation of the creditor under the Fair Credit Billing Act ("FCBA") to investigate the alleged dispute, provide documentation requested by the card member, and refrain from taking action to collect the disputed debt.

64.     The False Creditor Dispute Form Letters were in every respect fraudulent insofar as Defendants asserted non-existent disputes to the creditors of Ms. Rhodes.

65.     As a salient but not isolated example, in the August 18, 2014 letter to AT&T Universal Card, Defendants challenged a charge by the long-time dentist of Ms. Rhodes, Dr. Thomas Curtis, in the amount of $2,038.55.

66.     In each False Creditor Dispute Form Letter to the Rhodes Unsecured Creditors, Defendants represented to the creditor recipient the following:

> Further, per Regulation Z Section 226.13(a)(7) you have failed to mail a periodic statement to the last known address for our client and thus all charges for the last 60 days are disputed.
>
> ("Periodic Statement Misrepresentation")

67.     Prior to the transmission of the False Credit Dispute Form Letters by Defendants, Ms. Rhodes had provided to Defendants copies of her current credit card statements from each of the respective Rhodes Unsecured Creditors. Accordingly, Defendants were well aware that Ms. Rhodes was receiving monthly statements from each of her three credit card providers to the extent that the Periodic Statement Misrepresentation was a materially false, deceptive and misleading statement to the Rhodes Unsecured Creditors.

68.     Ms. Rhodes was not aware that Defendants sent the False Creditor Dispute Form

Letters. Indeed, Ms. Rhodes had absolutely no discussion with Defendants or with any of their agents that made mention of disputing any particular credit card charges. To the best information of Ms. Rhodes, the word processor at the Processing Center Location arbitrarily picked entries from her credit card statements to create a false dispute.

69.     Defendants did not provide a copy of the False Creditor Dispute Form Letters to Ms. Rhodes at the time they were sent, but rather Ms. Rhodes obtained a copy of same after repeated demands made by her counsel of record upon Defendants immediately prior to the filing of the instant action.

70.     Ms. Rhodes became greatly embarrassed when she learned for the first time that Defendants had disputed a charge to her dentist of many years without her permission, consent or knowledge. If Ms. Rhodes had learned that Defendants were creating fictitious disputes with respect to her credit card usage in order to fabricate a "billing error dispute" under the FCBA, Ms. Rhodes would have immediately terminated the representation by Defendants and reported them to the Florida Bar.

*b.  As to Consumer Reporting Agencies*

71.     With respect to the consumer reporting agencies, Defendants sent or caused to be sent letters dated September 18, 2014 to Equifax, Experian and Transunion ("False FCRA Dispute Letters").

72.     True and correct copies of the False FCRA Dispute Letters (with redacted personal information of Ms. Rhodes) are attached hereto and incorporated by reference as Composite Exhibit "F."

73.     As with the communications to the Unsecured Creditors of Ms. Rhodes,

Defendants falsely represented to each of the consumer reporting agencies that "errors and inaccuracies" existed on the credit report of Ms. Rhodes with respect to each of the Rhodes Unsecured Creditors when no such "errors and inaccuracies" existed.

     *c.  Scheme by Individual Attorney Defendants to Avoid "Meaningful Involvement"*

74.    As discussed above, the business model followed by the Individual Attorney Defendants: involved an internet  advertisement campaign to represent consumers throughout the United States with the use of a third-party "back-office" to mail out Form Letters to falsely represent that the Individual Attorney Defendants were meaningfully involved in the representation of the consumers.

75.    The Individual Attorney Defendants knew that "referral network" of LRN consisting of only three small law firms.  Accordingly, as the business model of the Individual Attorney Defendants could involve a potentially large number of out-of-state consumers such as Ms. Rhodes, it was essential to the Individual Attorney Defendants to avoid having to address a potentially large number of inquiries and communications from creditors, debt collectors and consumer reporting agencies.

76.    In order to impair the ability of third parties to communicate with the Individual Attorney Defendants, the Individual Attorney Defendants purposefully crafted the Form Letters to avoid disclosing the telephone number, fax number or email address of the Individual Attorney Defendants or even their law firm.  Indeed, if the Defendants were earnestly concerned about an expeditious resolution of the credit problems of Ms. Rhodes, the Individual Attorney Defendants would have drafted the Form Letters to provide the most efficient means for the creditors, debt collectors and the consumer reporting agencies to communicate with the Individual Attorney

Defendants.

### 2.   *"Defense" of Collection Lawsuit Against Ms. Rhodes*

77.     On or about May 6, 2015, Capital One caused to be filed a collection lawsuit in that certain case styled "*Capital One Bank, (USA), N.A. v. Kathryn Rhodes*, in the District Court, 4th Judicial Circuit, in and for the County of Ada,  Case No. CV 0C 1507908" ("Idaho Collection Proceeding").

78.     After being served with the Summons and Complaint in the Idaho Collection Proceeding, Ms. Rhodes immediately contacted Defendants to inform Defendants that a lawsuit had been filed by Capital One and she needed immediate assistance in responding to same.

79.     In response to the phone call from Ms. Rhodes, Defendants through a staff member informed Ms. Rhodes that Defendants would obtain "local legal representation" to assist Ms. Rhodes.

80.     Ms. Rhodes was greatly upset at the revelation by Defendants that Defendants were not able to represent her in the State of Idaho. As Ms. Rhodes had paid Defendants several thousand dollars, she had no choice but to acquiesce to Defendants' plan to obtain "local legal representation" to assist Ms. Rhodes.

81.     On Tuesday, May 19, 2015, a "legal assistant" at Fair Credit Law Group, Angelica Ramirez ("Ms. Ramirez"), emailed Ms. Rhodes concerning the representation of Ms. Rhodes in the Idaho Collection Proceeding ("Ramirez 5/19/15 Email").

82.     A true and correct copy of the Ramirez 5/19/15 Email is attached hereto and incorporated by reference as Composite Exhibit "G."

83.     Pursuant to the Ramirez 5/19/15 Email, Ms. Ramirez provided Ms. Rhodes with a

document entitled "Defendant's Response to Claim" with the instruction to Ms. Rhodes that Ms. Rhodes should file same with the Court in the Idaho Collection Proceeding.

84.     The preparation of the form pleading constituted the unauthorized practice of law in the State of Idaho.

85.     Incredulously, Ms. Ramirez also instructed Ms. Rhodes to pay a filing fee of $136.00 to file the response, after Ms. Rhodes had already paid Defendants thousands of dollars for absolutely no meaningful legal work.

86.     On or about May 27, 2015, the Court having jurisdiction of the Idaho Collection Proceeding entered an order setting a scheduling conference for Thursday, June 25, 2015 ("Scheduling Conference").

87.     As the Scheduling Conference date approached,  Ms. Rhodes repeatedly telephoned and emailed Defendants as Ms. Rhodes was becoming extremely anxious and depressed at the lack of action by Defendants.

88.     In her telephone discussions with Fair Credit Law, Ms. Rhodes informed Fair Credit Law that she could not appear at the Scheduling Conference as Ms. Rhodes was housebound as a result of her disability.

89.     Instead of addressing the immediate concerns of Ms. Rhodes, Defendants instructed Ms. Rhodes to send a "hardship letter" to the Court to inform the Court of her disability and her inability to attend any court proceedings.

90.     After hearing the desperate plea of Ms. Rhodes for assistance, Defendants informed Ms. Rhodes that a "local attorney" would appear at the Scheduling Conference.

91.     No attorney appeared at the Scheduling Conference on behalf of Ms. Rhodes.

Instead, the Court having jurisdiction of the Idaho Collection Proceeding entered *inter alia* an Outline of Trial Procedures for a Pro Se Party on June 25, 2015.

92.     On July 6, 2015, now exasperated and terrified, Ms. Rhodes faxed to Defendants a handwritten letter requesting that Defendants take action to defend the Idaho Collection Proceeding.

93.     No attorney "retained" by Defendants ever filed an appearance or otherwise defended the Idaho Collection Proceeding. Instead, Defendants contacted at least two different Idaho lawyers who apparently communicated with the attorneys representing Capital One to request that a default not be entered against Ms. Rhodes but did not appear of record in the Idaho Collection Proceeding.

94.     On September 20, 2015, Ms. Rhodes wrote to Attorney Brown and Attorney Friedman terminating her representation by Defendants ("Termination Letter").

95.     A true and correct copy of the Termination Letter is attached hereto and incorporated by reference as Exhibit "H."

96.     In order to avoid a default in the Idaho Collection Proceeding, Ms. Rhodes was required to retain local counsel on her own who negotiated a dismissal of the Idaho Collection Proceeding.

97.     Subsequent to the retention by Ms. Rhodes of Idaho counsel, Ms. Rhodes informed Defendants that she was terminating the Employment Agreement and demanded the return of all monies paid to Defendants.

98.     Notwithstanding the fact that Defendants performed no meaningful legal services on behalf of Ms. Rhodes, Defendants have refused to return any monies to Ms. Rhodes without

good cause or justification.

99.     Defendants received Nine Thousand Seven Hundred Dollars ($9,700.00) as compensation before services were fully performed by Defendants.

### 3.  Unconscionable Terms of Attorney Employment Agreement

#### a.  Contractual Language to Avoid Accountability by Defendants

100.    The employment agreement used by Defendants allowed Defendants to charge unconscionable fees for doing little or no meaningful legal work. In order to prevent harmed consumers such as Ms. Rhodes from obtaining meaningful legal recourse against Defendants, Defendants installed unconscionable and adhesive contractual provisions in the Employment Agreement.

101.    Notwithstanding the fact that Defendants advertised their services outside the State of Florida, Defendants installed into the Employee Agreement the following provision:

> 2a.     This Agreement will take effect upon the execution of it by both parties, i.e., at a time when both parties have signed it. This Agreement is entered into in Broward County, Florida and governed by the Laws of the State of Florida.
>
> ("Choice of Law Provision")

102.    In addition to the Choice of Law Provision, despite the marketing of services to persons outside of Florida, the Defendants installed in the Employment Agreement a venue provision as follows:

> 8d.     . . . The laws of the state of Florida govern this agreement and any litigation that may ensue will be exclusively in the Venue of Broward county Florida, irrespective to the place of residence or domicile.
>
> ("Venue Provision")

103.    In order to prevent the joinder of claims by consumers such as Ms. Rhodes,

Defendants installed a "class action waiver" in paragraph 8d of the Employment Agreement:

> Client agrees that the legal services being rendered are personal in nature and are being offered at a discount, and therefore agrees to not participate in any class action lawsuit whatsoever in connection with this agreement.

> ("Class Action Waiver Provision")

104.    The Class Action Waiver Provision falsely, deceptively and misleadingly represented to Ms. Rhodes and others similarly situated that the legal services were offered at a discount when in fact the legal fees were unconscionably high in light of the "legal services" actually provided.

105.    The Choice of Law Provision, Venue Provision, and the Class Action Waiver Provision constitute unconscionable and unenforceable terms for the employment of attorneys under the laws of both the State of Idaho and State of Florida.

### b.   Refusal to Provide Accounting by Defendants

106.    Paragraph 7b of the Employment Agreement provides:

> Client may terminate this Agreement for cause, contingent on legal service payments being current. Termination under this provision shall be in writing. Attorney shall retain fees that correspond with billable hours. Client may receive a final billing statement with outstanding charges or outstanding billable hours.

> ("Billable Hours Accounting Provision")

107.    Prior to the filing of the instant action, Ms. Rhodes through her attorney of record demanded Defendants provide time records to document the exorbitant and unconscionable fees charged to Ms. Rhodes.

108.    Defendants failed to provide time records to Ms. Rhodes despite the contractual obligation to do so under the Billable Hours Accounting Provision.

109.    By information and belief, Defendants do not maintain contemporaneous time records as no meaningful legal work was performed by Defendants in the representation of Ms. Rhodes.

### F. VIOLATION OF FLORIDA RULES OF PROFESSIONAL CONDUCT WITH RESPECT TO LEGAL SERVICES

#### 1. Excessive Fees

110.    In contravention of Rule 4-1.5(a), Rules Regulating the Florida Bar, Defendants as attorneys entered into an agreement for, charged or collected illegal, prohibited  or clearly excessive fee or cost or a fee generated by employment that was obtained through advertising not in compliance with the Rules Regulating the Florida Bar.

111.    The fees charged and collected by Defendants were unreasonable after a consideration of all factors set forth in Rules 1.5(b) and (c), Rules of Professional Conduct, Rules Regulating the Florida Bar.

#### 2. Non-Compliance with Lawyer Referral Services Rules

112.    Rule 4-7.22, Rules Regulating the Florida Bar, provide that a lawyer may not accept referrals from a lawyer referral service, unless the service receives no fee or charge that constitutes a division or sharing of fees.  Based on the best information available to Ms. Rhodes, Defendants engaged in the practice of "fee splitting" with one or more third-party non-lawyers, fees including LRN, Outsource Legal and Harbinger Capital.

113.    Rule 4-7.22(a)(4), Rules Regulating the Florida Bar, provides in pertinent part that a lawyer may not accept referrals from a lawyer referral service, unless the service carries or requires each lawyer participate in the service to carry professional liability insurance in the amount of not less than $100,000.00 per claim or occurrence.

114.    Neither Defendants nor LRN maintained professional liability insurance coverage in contravention of Rule 4-7.22(a)(4), Rules Regulating the Florida Bar.

115.    Rule 4-7.22(a)(11), Rules Regulating the Florida Bar, provides a lawyer may not accept referrals from a lawyer referral service, unless the service currently states in all advertisements that lawyers who accept referrals from it pay to participate in the lawyer referral service.

116.    In contravention of Rule 4-7.22(a)(11), Rules Regulating the Florida Bar, Defendants accepted referrals from LRN when the website maintained that LRN did not provide a disclosure that LRN accepted referrals from lawyers who paid to participate in the lawyer referral service.

### G.   DAMAGES OF MS. RHODES

117.    The conduct of Defendants has caused Ms. Rhodes great actual economic and non-economic harm and injury.

118.    The economic damages of Ms. Rhodes include the monies paid to Defendants and damage to the credit and credit reputation of Ms. Rhodes.

119.    The non-economic intangible damages of Ms. Rhodes include but is not limited to personal humiliation, exasperation, fear and apprehension, embarrassment, depression, outrage, mental anguish, emotional distress, anger, physical and mental pain and suffering.

### COUNT I - ACTION FOR VIOLATION OF
### THE FEDERAL CREDIT REPAIR ORGANIZATIONS ACT

120.     This is an action for violation of 15 U.S.C. §1679b, *et. sequi*, known more commonly as the "Federal Credit Repair Organizations Act" ("CROA").

121.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1

*Page 24 of 40*

through 119 above as if set forth hereat in full.

122.    At all times material hereto, Ms. Rhodes was a "consumer" as said term is defined under 15 U.S.C. §1679a(1).

123.    At all times material hereto, Defendants were a "credit repair organization" as said term is defined under 15 U.S.C. §1679a(3).

124.    At all times material hereto, Defendants were persons who used any instrumentality, interstate commerce or the mail to sell, provide or perform (or represents that such person can or will sell, provide or perform) any service in return for the payment of money or the value of consideration for the express or implied purpose of:

  (a)    improving the credit, credit history or credit rating of a consumer; or

  (b)    providing advice or assistance to consumers with regard to any activity or service which includes the credit record, credit history and credit rating of the consumer.

125.    Defendants have violated the provisions of 15 U.S.C. §1679b(a)(1) by making a statement, or counseling or advising any consumer to make any statement which is untrue or misleading (or which, upon the exercise of reasonable care, should have been known by the credit repair organization, officer, employee, agent or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing or credit capacity to:

- any consumer reporting agency; or

- any person who has extended credit.

126.    Defendants have violated the provisions of 15 U.S.C. §1679b(a)(3) by making or using any untrue or misleading representation of the services as a credit repair organization.

127.    Defendants have violated the provisions of 15 U.S.C. §1679b(a)(4) by engaging,

directly or indirectly, in any act, practice, or course of business that constitutes and results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or the sale of the services of a credit repair organization.

128.    As a result of the acceptance of the Monthly Installment Payment, Defendants received consideration from Ms. Rhodes prior to the performance of "any service" which Defendants had agreed to perform for Ms. Rhodes as a consumer before such service was fully performed in contravention of 15 U.S.C. §1679b(b).

129.    Defendants have violated the provisions of 15 U.S.C. §1679c in that Defendants did not provide a prior written statement advising Ms. Rhodes of her rights as a consumer under state and federal law prior to the execution of the Employment Agreement.

130.    Defendants have violated the provisions of 15 U.S.C. §1679d in that Defendants did not obtain from Ms. Rhodes a written and dated contract with the terms and provisions required in said subsection of CROA.

131.    Defendants have violated the provisions of 15 U.S.C. §1679e in failing to provide the cancellation form required in said subsection of CROA.

132.    As a direct and proximate result of the violation of CROA by Defendants, Ms. Rhodes has been damaged.

133.    Pursuant to 15 U.S.C. §1679g(a)(1), Ms. Rhodes is entitled to recover the amount of any actual damages sustained by Ms. Rhodes or the amount paid by Ms. Rhodes to Defendants as a credit repair organization.

134.    Pursuant to 15 U.S.C. §1679g(a)(2), Ms. Rhodes is entitled to punitive damages in an amount as the Court may allow.

135.     Pursuant to 15 U.S.C. §1679g, Ms. Rhodes is entitled to recover reasonable attorney's fees in the bringing of the instant action.

136.     Ms. Rhodes has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual,  Robert A. Friedman, an individual,  John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, for:

A.     Actual and punitive damages to be established at trial pursuant to 15 U.S.C. §1679g;

B.     Costs and reasonable attorney's fees in accordance with 15 U.S.C. §1679g(a)(3); and

C.     Such other and further relief as justice may require.

## COUNT II - ACTION FOR VIOLATION OF THE FLORIDA CREDIT SERVICE ORGANIZATIONS ACT

137.     This is an action for violation of the Florida Credit Service Organizations Act, Florida Statute §817.7001, *et seq.*  ("Florida CROA"), brought herein pursuant to the doctrine of pendent jurisdiction.

138.     Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 119 above as if set forth hereat in full.

139.     At all times material hereto, Ms. Rhodes was a "buyer" as said term is defined under Florida Statute §817.7001(1).

140.    At all times material hereto, Defendants were a "credit service organization" as said term is defined under Florida Statute §817.7001(2)(a).

141.    At all times material hereto, the monies owed to the Rhodes Unsecured Creditors constituted a "extension of credit" as said term is defined under Florida Statute §817.7001(3).

142.    Defendants have violated Florida CROA in the following respects:

A.    <u>By Obtaining Consideration Prior to Full and Complete Performance</u> - Defendants have obtained valuable consideration prior to the full and complete performance of the services which Defendants as a credit service organization had agreed to perform in violation of Florida Statute §817.7005(1);

B.    <u>By Making a False Statement to Creditor</u> - Defendants have made a statement that is false and misleading or that should be known by the exercise of reasonable care to be false or misleading, or omitted material facts to the Rhodes Unsecured Creditors as a person which has extended credit to Ms. Rhodes in violation of Florida Statute §817.7005(3);

C.    <u>By Commission of Fraud</u> - Defendants have made or used a false or misleading representation or omitted material facts in the offer of sale of their services as a credit service organization or engaged, directly or indirectly, in an act, practice or course of business that operate or would operate as a fraud or deception upon Ms. Rhodes or other persons in connection with their offer or sale of services as a credit service organization in violation of Florida Statute §817.7005(4).

143.    The Defendants have violated the provisions of Florida Statute §817.702 in that Defendants did not provide a written statement to Ms. Rhodes as buyer which contained the information required by Florida Statute §817.703.

144.     The Defendants have violated the provisions of Florida Statute §817.704 in that Defendants did not obtain from Ms. Rhodes a written and dated contract with the terms and provisions required by Florida CROA.

145.     As a direct and proximate result of the violations of the Florida CROA, Ms. Rhodes has been damaged.

146.     Pursuant to Florida Statute §817.706, Ms. Rhodes is entitled to recover actual damages, but in no case less than the amount paid by Ms. Rhodes to Defendants, plus reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities,  for damages, together with interest, costs and attorney's fees pursuant to Florida Statute §817.706.

## COUNT III - ACTION FOR VIOLATION OF THE TELEMARKETING AND CONSUMER FRAUD AND ABUSE PREVENTION ACT

147.     This is an action for violation of 15 U.S.C. §6101, *et seq.*, known more commonly as the "Telemarketing and Consumer Fraud and Abuse Prevention Act," ("Telemarketing Act").

148.     Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 119 above as if set forth hereat in full.

149.     At all times material hereto, Ms. Rhodes was a "customer" as said term is defined under 16 C.F.R. §310.2 (n).

150.    At all times material hereto, the business activities of Defendants constituted a "debt relief service" as said term is defined under 16 C.F.R. §310.2(o).

151.    At all times material hereto, Defendants were "seller(s)" with respect to debt relief services offered to Ms. Rhodes as said term is defined under 16 C.F.R. §310.2(aa).

152.    In 2010, the FTC issued Telemarketing Sales Rules ("TSR") which imposes specific restrictions and requirements on debt relief services such as credit counseling, debt settlement, debt negotiation, and debt elimination companies, including attorneys.

153.    Pursuant to 16 C.F.R. §310.6(b)(5) and (6), TSR applies to the debt relief services and the sellers who advertise on the internet when the consumer responds by telephone.

154.    Defendants have violated the TSR with respect to its services to Ms. Rhodes in the following respects:

(a)   by requesting and receiving payment of any fee in consideration for debt relief service before achieving any result in contravention of 16 C.F.R. §310.4(a)(5)(i);

(b)   by failing to escrow fees in contravention of 16 C.F.R. §310.4(a)(5)(ii); and

(c)   by misrepresenting any debt relief service provided by Defendants in contravention of 16 C.F.R. §310.3(a)(2)(x).

155.    Defendants have maintained a practice and pattern of telemarketing which violates the TSR.

156.    As a direct and proximate result of the violation of the TSR, Ms. Rhodes has sustained actual economic and non-economic damages in excess of Fifty Thousand Dollars, ($50,000.00).

157.    Prior to the filing of the instant action, Ms. Rhodes provided a copy of the Complaint to the FTC pursuant to 15 U.S.C. §6104(b).

158.    Pursuant to 15 U.S.C. §6104(d), Ms. Rhodes is entitled to the recovery of attorney's fees and costs for the bringing of the instant action.

159.    Ms. Rhodes has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual,  John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, for:

A.    Actual damages to be established at trial pursuant to 15 U.S.C. §6104(a);

B.    Injunctive relief against Defendants prohibiting further violations of the TSR as described above pursuant to 15 U.S.C. §6104(a);

C.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §6104(d); and

D.    Such other and further relief as justice may require.

### COUNT IV - ACTION FOR VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

160.    This is an action for violation of Florida Statute §501.201, *et sequi,* known more commonly as the "Florida Deceptive and Unfair Trade Practices Act" (the "DUTPA") brought herein pursuant to the pendent jurisdiction of the Court.

161.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 119 above as if set forth hereat in full.

### *General Allegations as to DUTPA*

162.    At all times material hereto, Ms. Rhodes was an "interested party or person" as said term is defined under Florida Statute §501.203(6).

163.    By virtue of the acts described above, Defendants were engaged in "trade or commerce" as said term is defined under Florida Statute §501.203(8).

### *Violation of the Telemarketing Sales Rule*

164.    At all times material hereto, Ms. Rhodes was a "customer" as said term is defined under 16 C.F.R. §310.2 (n).

165.    At all times material hereto, the business activities of Defendants constituted a "debt relief service" as said term is defined under 16 C.F.R. §310.2(o).

166.    At all times material hereto, Defendants were "seller(s)" with respect to debt relief services offered to Ms. Rhodes as said term is defined under 16 C.F.R. §310.2(aa).

167.    In 2010, the FTC issued Telemarketing Sales Rules ("TSR") which imposes specific restrictions and requirements on debt relief services such as credit counseling, debt settlement, debt negotiation, and debt elimination companies, including attorneys.

168.    Pursuant to 16 C.F.R. §310.6(b)(5) and (6), TSR applies to the debt relief services and the sellers who advertise on the internet when the consumer responds by telephone.

169.     Defendants have violated the TSR with respect to its services to Ms. Rhodes in the following respects:

(a)  By requesting and receiving payment of any fee in consideration for debt

relief service before achieving any result in contravention of 16 C.F.R.

§310.4(a)(5)(i);

(b) by failing to escrow fees in contravention of 16 C.F.R. §310.4(a)(5)(ii); and

(c) by misrepresenting any debt relief service provided by Defendants in

contravention of 16 C.F.R. §310.3(a)(2)(x).

170. The violation of the TSR is a per se violation of the DUTPA pursuant to Florida

Statute §501.211(3)(c).

### *Violation of the FDUTPA as to Senior Citizens and Persons of Disabilities*

171. At all times material hereto, Ms. Rhodes was a "person who has a disability" as

said term is defined under Florida Statute §501.2077(1)(d).

172. At all times material hereto, Ms. Rhodes was a "senior citizen" as said term is

defined under Florida Statute §501.2077(1)(e).

173. Pursuant to Florida Statute §501.2077, Defendants willfully used a method, act or

practice in violation of DUTPA which victimized or attempted to victimize a senior citizen or

person who has a disability.

174. As a direct and proximate result of the above described acts, Defendants are liable

for a civil penalty of not more than Fifteen Thousand Dollars ($15,000.00) for each such

violation if he or she knew or should have known that his or her conduct was unfair or deceptive

pursuant to Florida Statute §501.2077(2).

$$*\qquad\qquad *\qquad\qquad *$$

175. As more particularly described above, Defendants have engaged in unfair methods

of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the

conduct of trade or commerce in violation of Florida Statute §501.204(1) and (2).

176. Pursuant to Florida Statute §501.211, Ms. Rhodes  is entitled to obtain a

declaratory judgment that the acts and practices of Defendants under the DUTPA and to enjoin Defendants from further violations of the DUTPA.

177.   It is in the interest of protection of consumers that the Defendants be prohibited and proscribed from further violations of the DUTPA as described above.

178.   As a direct and proximate result of the violation of the DUTPA, Ms. Rhodes has been damaged and is an aggrieved person.

179.   Ms. Rhodes has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC,"  Joel A. Brown, an individual, and Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, for:

A.   Compensatory economic damages;

B.   Declaratory relief against Defendants adjudicating that the actions of Defendants described above constitute violations of the DUTPA;

C.   Injunctive relief against Defendants proscribing Defendants from further violations of the DUTPA as described herein; and

D.   Attorney's fees and court costs pursuant to Florida Statute §501.2105.

**COUNT V - ACTION FOR BREACH OF CONTRACT**

180.   This is an action for breach of contract brought herein pursuant to the pendent jurisdiction of the Court.

181.     Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 119 above as if set forth hereat in full.

182.     By failing to provide any meaningful legal services on behalf of Ms. Rhodes, Defendants have breached the terms and provisions of the Employment Agreement.

183.     As a result of the breach of the Employment Agreement, Ms. Rhodes has been damaged.  The damages of Ms. Rhodes include the loss of monies paid to Defendants together with damage to her credit and credit reputation.

WHEREFORE, Plaintiff, Kathyn M. Rhodes, an individual, demands judgment against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, and Robert A. Friedman, an individual, jointly and severally, together with interest costs and attorney's fees.

## COUNT VI - ACTION FOR FRAUD

184.     This is an action for fraud brought herein pursuant to the pendent jurisdiction of the Court.

185.     Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 119 above as if set forth hereat in full.

186.     As more fully described above, Defendants misrepresented material facts and made material omissions concerning the services to be provided by Defendants.

187.     Defendants knew that the representations set forth above were false or made such representations recklessly, and Defendants had no reasonable grounds for believing those representations to be true.

188.     Defendants knew that the above representations and omissions concerning

the services of Defendants were material and important.

190. Defendants intended to deceive Ms. Rhodes, who relied upon the

misrepresentations and omission to her detriment.

190. As a direct and proximate result of the fraud and non-disclosures by Defendants,

Ms. Rhodes has suffered actual damages as described herein.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment for

actual and punitive damages against Defendants, The Fair Credit Law Group, LLC, a Florida

limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual,

Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe

Corporations 1-10, unknown business entities, together with interest and costs.

## COUNT VII - ACTION FOR NEGLIGENT MISREPRESENTATION

191. This is an action for negligent misrepresentation brought herein pursuant to the

pendent jurisdiction of the Court.

192. Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1

through 119 above as if set forth hereat in full.

193. As more particularly described above, Defendants misrepresented and failed to

disclose material facts concerning the services to be provided by Defendants.

194. Defendants believed the above statements to be true and to be complete but

which were in fact false and incomplete.

195. Defendants were negligent in making the statements and omissions concerning

the services of Defendants.  Defendants should have known that the statements were false.

196. Defendants, in making the statements concerning the services of Defendants,

intended that Ms. Rhodes rely upon said statements.

197.    As a direct and proximate result of the negligent misrepresentations of the Defendants, Ms. Rhodes has suffered actual damages as described above.

WHEREFORE, Plaintiff, Kathryn Rhodes, an individual, demands judgment for damages against Defendants,  Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, together with interest and costs.

## COUNT VIII- ACTION FOR FRAUDULENT INDUCEMENT

198.    This is an action for fraudulent inducement brought herein pursuant to the pendent jurisdiction of the Court.

199.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 119 above as if set forth hereat in full.

200.    As more particularly described above, Defendants induced Ms. Rhodes into signing the Employment Agreement by knowingly making misrepresentations of material fact and omitting material facts with the intent that Ms. Rhodes rely on them to her detriment.

201.    Defendants' misrepresentations of material fact and omissions of material fact were made and omitted with the intent that Ms. Rhodes rely on them, or be deceived by them to her detriment.

202.    Ms. Rhodes justifiably relied upon the misrepresentations to her detriment and further, had Ms. Rhodes been advised of the truth, Ms. Rhodes would not have entered into the Employment Agreement.

203.     As a result of the fraud and deceit by Defendants, Ms. Rhodes has suffered actual damages as described above.

WHEREFORE, Plaintiff, Kathryn Rhodes an individual, demands judgment for compensatory and punitive damages against  Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities,  together with interest and costs.

## COUNT IX - ACTION FOR UNJUST ENRICHMENT

204.     This is an action for unjust enrichment brought herein pursuant to the pendent jurisdiction of the Court.

205.     Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 119 above as if set forth hereat in full.

206.     Ms. Rhodes has conferred a benefit on Defendants by paying for services offered by Defendants.

207.     Defendants have knowledge of the benefit conferred by Ms. Rhodes.

208.     Defendants have accepted and/or retained the benefit conferred by Ms. Rhodes.

209.     The circumstances are such that it would be inequitable for Defendants to retain the benefits without paying the fair value thereof.

210.     Defendants have been unjustly enriched by the retention of the benefits paid by Ms. Rhodes.

WHEREFORE,  Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability

company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, for damages, interest, and costs, and for such other and further relief as justice may require.

## COUNT X - ACTION FOR CIVIL CONSPIRACY

211.    This is an action for civil conspiracy brought herein pursuant to the pendent jurisdiction of the Court.

212.    Ms. Rhodes realleges and reaffirms the allegations contained in Paragraphs 1 through 119 above as if set forth hereat in full.

213.    As more particularly described above, an agreement existed between the respective Defendants to do an unlawful act or to do a lawful act by unlawful means, to-wit: the charging of an unlawful and unconscionable fee for "legal services" not in compliance with applicable federal and state laws.

214.    As a result of the conspiracy between the respective Defendants to violate federal and state consumer protection laws, Ms. Rhodes has been damaged as more particularly described above.

WHEREFORE, Plaintiff, Kathryn M. Rhodes, an individual, demands judgment jointly and severally against Defendants, The Fair Credit Law Group, LLC, a Florida limited liability company, d/b/a "Fair Credit Law Group, LLC," Joel A. Brown, an individual, Robert A. Friedman, an individual, John Doe 1-15, unknown individuals, and John Doe Corporations 1-10, unknown business entities, for actual and punitive damages, interest, costs, and attorney's fees as permitted by law and for such other and further relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff, Kathryn M. Rhodes, an individual,  pursuant to Rule 38(b), Federal Rules of

Civil Procedure, demands a trial by jury of all issues so triable.

/s/ *Robert W. Murphy* _____

ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, Florida 33316
(954) 763-8660 Telephone
(954) 763-8607 Fax
Email:  rphyu@aol.com and
rwmurphy@lawfirmmurphy.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on January 10, 2017 on Allison L. Freidman, Esquire, Allison L. Friedman, P.A., 20533 Biscayne Boulevard, Suite 4-435, Aventura, Florida 33180, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ *Robert W. Murphy* _____

Attorney